415 F.2d 889
 LILES CONSTRUCTION COMPANY, Inc., and United States Fidelity and Guaranty Company, Appellants,
v.
UNITED STATES of America, for the use of Stabler Paint Manufacturing Company, Inc., Appellee.
 No. 26248 Summary Calendar.
 United States Court of Appeals Fifth Circuit.
 September 5, 1969.
 
 Wilmer H. Mitchell, of Holsberry, Emmanuel, Sheppard & Mitchell, Pensacola, Fla., for appellants.
 Bert Lane, Roderic G. Magie, of Beggs, Lane, Daniel, Gaines & Davis, Pensacola, Fla., for appellee.
 Before WISDOM, COLEMAN and SIMPSON, Circuit Judges.
 SIMPSON, Circuit Judge:
 
 
 1
 Pursuant to new Rule 18 of the Rules of this Court, we have concluded on the merits that this case is of such character as not to justify oral argument and have directed the Clerk to place the case on the Summary Calendar and to notify the parties in writing. See Murphy v. Houma Well Service, 5 Cir. 1969, 409 F.2d 804, Part I.
 
 
 2
 The facts involved in this case are typical of a Miller Act suit, 40 U.S.C. §§ 270a-e. Liles Construction Company (Liles) entered into a written construction contract with the United States Air Force.[1] Liles obtained a standard payment bond with United States Fidelity and Guaranty Company (U.S.F. & G.) for the protection of all persons supplying labor or material to the government job in accordance with the requirements of the Miller Act.
 
 
 3
 After a subcontractor, J. B. McKinney Painting Company, had not paid for supplies purchased from the use-plantiff, Stabler Paint Manufacturing Company, (Stabler) Stabler brought this action against Liles, the general contractor and its surety, U.S.F. & G. The district court entered summary judgment in favor of Stabler in the amount of $10,288.05, the value of the materials supplied under the Miller Act.
 
 
 4
 The primary issue on appeal is whether the trial court correctly determined as a matter of law that the appellee had complied with notice requirements of the Miller Act.[2] The giving of such notice is a condition precedent to a supplier's right to sue on the payment bond. Coffee v. United States for Use and Benefit of Gordon, 5 Cir. 1946, 157 F.2d 968; Houston Fire & Casualty Insurance Co. v. United States for Use & Benefit of Trane Co., 5 Cir. 1954, 217 F.2d 727.
 
 
 5
 Both parties agree that the notice upon which the appellee relies consists of two letters, the first dated July 9, 1965 and the second dated July 10, 1965.[3] The July 9 letter referred to an account with the sub-contractor, McKinney Painting Company on a job for the appellant at Fort Stewart, Georgia. This communication, as the appellant admits in its brief, adequately meets the notice requirements of the Miller Act at least as to the Fort Stewart job. The July 10 letter sought to correct a mix-up in the accounting procedure of Stabler and eliminated the claim as to the Fort Stewart account and asserted a claim as to the Eglin Air Force Base account.
 
 
 6
 Liles argues that the letters should be read separately because they refer to two distinct contracts. If read separately, the appellant claims that the second letter provided insufficient notice because the letter was not sent by registered mail, did not refer to the ninety day time limitation, did not state with substantial accuracy the amount claimed, and did not apprise the general contractor that the use-plaintiff was looking to it for payment.
 
 
 7
 The test to be applied to the question of the sufficiency of a Miller Act notice was stated in Fleisher Engineering and Construction Company v. United States for the Use and Benefit of Hallenbeck, 311 U.S. 15, 61 S.Ct. 81, 85 L.Ed. 12 (1940):
 
 
 8
 "[A] requirement which is clearly made a condition precedent to the right to sue must be given effect, but in determining whether a provision is of that character the statute must be liberally construed so as to accomplish its purpose. `Technical rules otherwise protecting sureties from liability have never been applied in proceedings under this statute'".
 
 
 9
 With the above principle in mind, we conclude that the trial court correctly determined that the notice was sufficient. The district court held that the letters should be read together and that together the letters provided adequate notice that Stabler was looking to Liles for payment. We agree with the district court's conclusion "that it would be doing violence to ordinary language to conclude that the second (letter) merely and only dropped the claim for the Fort Stewart job". Moreover, the absence of registration of the second letter cannot be held to deny Stabler's claim. cf. Fleisher Engineering & Construction Co. v. United States for Use and Benefit of Hallenbeck, supra; United States for Use and Benefit of Franklin Paint Co. v. Kagan, D.C.Mass. 1955, 129 F.Supp. 331. Further the overestimate of the amount due was substantially accurate and fully apprised Liles that Stabler was looking to it, as general contractor, for payment of at least $10,288.05, the amount for which judgment was entered. cf. United States for Use & Benefit of Hopper Bros. Quarries v. Peerless Casualty Company, 8 Cir. 1958, 255 F.2d 137; United States for Use and Benefit of Franklin Paint Co. v. Kagan, supra. Since there is no material factual dispute as to the amount due, we affirm the district court's granting of summary judgment as to the use-plaintiff, Stabler.
 
 
 10
 In accordance with our holding in United States Fidelity and Guaranty Company v. Hendry Corporation, 5 Cir. 1968, 391 F.2d 13, we grant the appellee's unopposed motion for attorney's fees on this appeal, pursuant to Florida Statutes 627.0127, as amended in 1967. The Clerk is directed to fix said fee in the amount of $875.00 in taxing costs upon this appeal.
 
 
 11
 Affirmed.
 
 
 
 Notes:
 
 
 [1]
 Liles was to modify and improve 236 family housing units in the Ben's Lake area at Eglin Air Force Base, Florida
 
 
 [2]
 The Miller Act, 40 U.S.C. § 270b, provides that a claimant seeking recovery for materials provided to a sub-contractor must give written notice to the prime contractor, "within ninety days from the date on which such person * * * supplied the last of the material for which such claim is made, stating with substantial accuracy the amount claimed"
 
 
 [3]
 The July 9 letter read:
 "Gentlemen,
 It having been almost ninety days since we made the last shipment of paint to J. B. McKinney Painting Company, Painting Sub-Contractors on the subject job, for use on that job, it is imperative that we notify you as general contractor that there is a balance of $2,853.97 due us for materials furnished for use on the job.
 If there is other or more detailed information that you desire in connection with this balance please do not hesitate to call or write us and we shall be glad to furnish it.
 We have not heard from our customer, Mr. McKinney, just when to expect payment but presume that upon receipt of proceeds he will remit this balance to us. Nevertheless, we must give you this notice to preserve such rights as we may have under the terms of the sureties involved.
 Very truly yours,
 President".
 The July 10 letter read:
 "Gentlemen:
 With reference to the registered letter which we sent you yesterday concerning the account with J. B. McKinney Painting Company for materials charged to the Fort Stewart job, Mr. Edmiston has just called our Vice-President, Mr. Burks. It appears that there was some confusion about the paint being used at Fort Stewart and Mr. Edmiston ordered paint from us so that he could proceed with the job until corrections or replacements were made with the paint they were using. It seems that the questions that developed about the paint being used were of such nature that they changed their mind about using our paint and pulled it off the job, later forwarded it to Eglin Field and used it on the Bens' Lake Area job that they have been painting for your company.
 In view of the circumstances, as explained to us, we are, at the direction of Mr. Edmiston and Mr. McKinney transferring our charges totalling $2,853.97 from the Fort Stewart to the Bens' Lake job which would increase the amount owing us on the Bens' Lake Area job to $12,710.61 instead of the $9,856.64 which we were carrying against that job. That transfer would, of course, leave no charges on our books against the Fort Stewart job.
 If you have any questions about this account involving the two subcontracts referred to, please contact us.
 Very truly yours,
 President".