**UNITED STATES of America for the Use and Benefit of KELLY–MOHRHUSEN CO., Inc., a Wisconsin corporation, Plaintiff-Appellant,**

**v.**

**MERLE A. PATNODE CO., Limited, et al., Defendant-Appellee.**

**No. 71–1068.**

United States Court of Appeals, Seventh Circuit.

Feb. 3, 1972.

Burton A. Strand, Milwaukee, Wis., for plaintiff-appellant.

Thomas N. Klug, Michael Klein, Milwaukee, Wis., Borgelt, Powell, Peterson & Frauen, Milwaukee, Wis., of counsel.

Before MAJOR,* Senior Circuit Judge, and FAIRCHILD and STEVENS, Circuit Judges.

* Senior Circuit Judge Major, whose death occurred on January 4, 1972, heard oral argument, but did not participate in the adoption of this opinion.

STEVENS, Circuit Judge.

This is an action to recover $2,950 for labor and materials furnished by plaintiff in connection with the construction of an addition to the United States Post Office in Delavan, Wisconsin. Pursuant to an arrangement with the roofing subcontractor, who went bankrupt, plaintiff supplied and installed the flashing. The question presented is whether his notice to the general contractor was adequate to preserve his claim against the surety on its payment bond, the general contractor having also become insolvent. The answer turns on whether the relevant statute, 40 U.S.C. § 270b, is to be construed literally or liberally.

The statute requires contractors for public buildings to furnish the government with an appropriate performance bond and a payment bond. § 270a. The payment bond has as one of its purposes the protection of laborers and materialmen who are not paid in full for work performed or materials furnished within 90 days after completion of their work or deliveries. If such a person has dealt exclusively with a subcontractor and had no direct relationship with the general contractor, he must give notice to the general contractor in compliance with the statute to preserve his rights. In this case plaintiff did give notice to the general contractor, who thereafter went into receivership, and therefore may recover from the defendant surety if that notice was adequate.

The statute provides that the right of action upon the payment bond arises ". . . upon giving written notice

. . . stating with substantial accuracy the amount claimed and the name of the party to whom the material was furnished or supplied or for whom the labor was done or performed." It further requires that the notice "shall be served . . . by registered mail . . . or in any manner in which the United States marshal . . . is authorized by law to serve summons." § 270b(a).

Plaintiff's notice was admittedly timely and defendant acknowledges that the failure to use registered mail is not fatal despite the plain language of the statute. The defense relied upon is the omission of the roofing subcontractor's name from the letter sent by plaintiff to the general contractor. The facts show, however, that the omitted information was, in fact, provided orally, and in any event the general contractor knew the identity of the subcontractor to whom the flashing had been supplied.[1]

Defendant construes the Supreme Court decision in Fleisher Engineering & Construction Co. v. United States, for Use and Benefit of Hallenbeck, 311 U.S. 15, 61 S.Ct. 81, 85 L.Ed. 12, as requiring strict compliance with the portion of the statute dealing with the contents of the notice even though the Court relied heavily on the remedial purpose of the statute to justify its holding that registered mail was not required if the evidence showed that the notice was actually received. We are satisfied that defendant misreads the *Fleisher* opinion.

That case arose under the Miller Act which was enacted in 1935[2] as a substi-

---

[1]. The facts pertaining to the notice can be briefly stated. Less than a month after plaintiff completed his flashing work he was advised that the roofing contractor was in bankruptcy. His attorney then telephoned the general contractor, explained the relevant facts (including the name of the roofing subcontractor), and advised that plaintiff would look to the general contractor for payment. In reply he was told that funds had not been paid out and were available. The lawyer

then stated that he would confirm the conversation by letter. The same day he wrote:

"Per our telephone conversation this date, this is to advise you that I represent Kelly-Mohrhusen Co., Inc. in relation to their claim for 2,900.00 for furnishing and installing flashing as per plans and specifications for the Delavan Post Office." (A-31)

[2]. 49 Stat. 794.

tute for its 1905 predecessor.[3] In its 1905 form the statute provided that only the United States could commence litigation against the surety during the six month period following the completion of the work. The right of action created by the statute in favor of creditors of the contractor did not arise until after that six month period ended. Strict adherence to this statutory mandate was required.[4]

In *Fleisher* the Court made reference to the strict construction of the condition precluding a materialman from bringing suit on a contractor's bond during the six months following completion of the work, but held that strict approach inapplicable to the portions of the statute describing the manner in which notice should be given:

"In short, a requirement which is clearly made a condition precedent to the right to sue must be given effect, but in determining whether a provision is of that character the statute must be liberally construed so as to accomplish its purpose. 'Technical rules otherwise protecting sureties from liability have never been applied in proceedings under this statute.' Illinois Surety Co. v. John Davis Co., [244 U.S. 376, 37 S.Ct. 614, 61 L.Ed. 1206]. The same principle should govern the application of the Miller Act.

\*　　\*　　\*　　\*　　\*　　\*

"We think that the purpose of this provision as to manner of service was to assure receipt of the notice, not to make the described method mandatory so as to deny right of suit when the required written notice within the specified time had actually been given and received. In the face of such receipt, the reason for a particular mode of service fails. It is not reasonable to suppose that Congress intended to insist upon an idle form. Rather, we think that Congress intended to provide a method which would afford sufficient proof of service when receipt of the required written notice was not shown." 311 U.S. at 18, 19, 61 S.Ct. at 83.

■ The opinion does not expressly consider the contents of the notice. Since the Court found the mode of service satisfactory, though plainly not in conformity with the mandatory language contained in the Act, it would be anomalous to adopt a more strict interpretation of the statutory language which merely demands "substantial accuracy" for the content of the notice. We construe the references in the opinion to the "condition precedent to the right to sue" to relate to timeliness of the notice, and interpret the Court's emphasis on the remedial purposes of the Act as applicable to the content of the notice as well as the manner of its service.

We therefore find ourselves in agreement with the reasoning of the Fifth Circuit and the cases which it reviewed in Houston Fire & Cas. Insurance Co. v. United States, for Use and Benefit of Trane Co., 217 F.2d 727, 729–730 (1954); we hold that the district court

---

3. The original statute was enacted in 1894, 28 Stat. 278, and was amended in 1905, 33 Stat. 811.

4. "By this statute a right of action upon the bond is created in favor of certain creditors of the contractor. The cause of action did not exist before and is the creature of the statute. The act does not place a limitation upon a cause of action theretofore existing, but creates a new one upon the terms named in the statute. The right of action given to creditors is specifically conditioned upon the fact that no suit shall be brought by the United States within the six months named, for it is only in that event that the creditors shall have a right of action and may bring a suit in the manner provided. . . .

"The purpose of Congress to give the United States the exclusive right to bring suit within six months is stated in terms too plain to be mistaken or to require construction, because of any possible uncertainty in their meaning. . . ." United States ex rel. Texas Portland Cement Co. v. McCord, 233 U.S. 157, 162–163, 34 S.Ct. 550, 552, 553, 58 L.Ed. 893.

erred in relying on United States, for the Use and Benefit of John A. Denie's Sons Co. v. Bass, 111 F.2d 965 (6th Cir. 1940).[5]

We believe that the letter in this case (which expressly referred to the telephone conversation), together with the other facts, including the general contractor's knowledge of the identity of the roofing contractor,[6] satisfied the "substantial accuracy" requirement of the statute. As was true in *Trane*, ". . . there exists a writing from which, in connection with oral testimony, it plainly appears that the nature and state of the indebtedness was brought home to the general contractor." 217 F.2d at 730.

The judgment is reversed.

---

5. It was the conflict between that decision and the Second Circuit's holding in United States, for Use and Benefit of Hallenbeck v. Fleisher Engineering & Construction Co., 107 F.2d 925, which the Supreme Court granted certiorari to resolve in *Fleisher*. The affirmance of the Second Circuit implicitly rejected the Sixth Circuit's holding in *Bass*.

6. William Kiser, an officer of the general contractor, admitted knowing the identity of the roofing company and also testified that he was aware of the subcontract to Kelly-Mohrhusen. (A–45) Indeed, if we were to take judicial notice of the size of the Delavan Post Office, it would be difficult to find any contrary testimony credible.