469 F.2d 1348
 UNITED STATES of America to the Use of Wayne BAILEY d/b/a
Wayne Bailey Trucking, Plaintiffs-Appellees,
v.
Elmer J. FREETHY, Individually and d/b/a Elmer J. Freethy
Company, et al., Defendants-Appellants.
 No. 26783.
 United States Court of Appeals,
Ninth Circuit.
 Nov. 27, 1972.
 
 R. Bruce Hoffe (argued), of Watson, Hoffe & Fannin, Richmond, Cal., for defendants-appellants.
 Donald E. Huckins (argued), of Weis & Huckins, Yuba City, Cal., for plaintiffs-appellees.
 Before TRASK, CHOY and GOODWIN, Circuit Judges.
 TRASK, Circuit Judge:
 
 
 1
 This is an appeal from a summary judgment in favor of a supplier of labor and materials and against a prime contractor and his bonding companies under the terms of the Miller Act,[1] 40 U.S.C. Secs. 270a-270e.
 
 
 2
 No question is raised by the parties to the underlying facts. Elmer J. Freethy Co. (prime contractor) entered into a construction contract with the United States and provided a bond with corporate sureties for the protection of laborers and materialmen as required under the Miller Act. A subcontract was entered into by the prime contractor with Peter F. Giordano & Sons, Inc., (Giordano) for performance of a part of this work. Giordano obtained labor and materials from Wayne Bailey d/b/a Wayne Bailey Trucking (Bailey) for which he did not pay. These were the allegations of the complaint brought by Bailey.
 
 
 3
 The prime contractor and the bonding companies filed their answer denying liability and affirmatively alleging that Bailey had failed to give the written noice required under Sec. 270b(a) of the Miller Act. The court rendered a summary judgment in favor of Bailey, the supplier. The prime contractor appeals. Thus, the narrow issue to be decided is whether two letters written by Bailey to Freethy, the prime contractor, comply with the notice requirements. The first of the letters dated October 16, 1968, informed him of the unpaid debt and closed with a polite request for help in bringing the account up to date.[2] A second letter dated December 2, 1968, showed the intervening adjustments to the account and stated the balance due of $18,524.59. The amount is not questioned. It closed with the statement:
 
 
 4
 "If any further information or explanation is needed please feel free to give us a call."
 
 
 5
 The Miller Act represents a congressional effort to protect persons supplying labor and material for the construction of federal public facilities and as such its remedial purpose should receive a liberal application. United States for Benefit of Sherman v. Carter, 353 U.S. 210, 216, 77 S.Ct. 793, 1 L.Ed.2d 776 (1957). However, its protection is not unlimited and the conditions under which liability is imposed must be recognized and given effect.
 
 
 6
 One such limitation and the one with which we are concerned here is that the laborer or materialman must give notice in writing and that writing "must inform the prime contractor, expressly or by implication, that the supplier is looking to the contractor for payment of the subcontractor's bill." Bowden v. United States for Use of Malloy, 239 F.2d 572, 577 (9th Cir. 1956), cert. denied, 353 U.S. 957, 77 S.Ct. 864, 1 L.Ed. 2d 909 (1957); United States for Use of Jinks Lumber Co. v. Federal Insurance Co., 452 F.2d 485 (5th Cir. 1971).[3] Appellant relies upon Bowden v. United States for Use of Malloy, supra; United States for Use of Charles R. Joyce & Son, Inc. v. F. A. Baehner, Inc., 326 F.2d 556 (2nd Cir. 1964); and United States for Use of Noland Co., Inc. v. Skinner & Ruddock, Inc., 164 F.Supp. 616 (E.D. S.C.1958), as examples of case law supporting his position.
 
 
 7
 In each of those cases the supplier or use-plaintiff was unsuccessful because the written notice relied upon was held to be insufficient. In Skinner & Ruddock the supplier wrote to the prime contractor:
 
 
 8
 "[W]e feel sure that this customer will pay us as soon as sufficient collections are effected, and we are glad to work with you in any way for the mutual betterment of everyone concerned."
 
 
 9
 The court found this language inconsistent with the assertion of a Miller Act claim, as appears abundantly clear.
 
 
 10
 There was no writing of any kind by the supplier directly to the prime contractor in Bowden. He attemped to rely upon a letter written by the subcontractor to the prime contractor assigning to various suppliers the proceeds from work completed by the subcontractor. The particular supplier, who was the useplaintiff, knew nothing about the letter and, of course, could not have relied upon it.
 
 
 11
 In Baehner while the supplier did write letters directly to the prime contractor and his lawyers wrote a letter as well, the obvious purpose of them was to encourage the prime contractor to put pressure upon his subcontractor to pay his bills. The court commented upon the fact that there were doubtless good reasons why the lawyers for the supplier did not wish to send a Miller Act claim to the prime contractor.
 
 
 12
 In the case before us, although the tenor of the letters could have been more explicit, we believe that they were clearly designed to and did inform the prime contractor that this supplier was looking to him for payment of the subcontractor's bill. The first one began, "[W]e wish to inform you that . . . Giordano . . . shows a balance due us of $22,655.34 as of Sept. 25, 1968." It closes with "[w]e would appreciate any help you may be able to give us in bringing this account up to date, as the truckers have already recieved (sic) their money for the work done."
 
 
 13
 The closing comment might be interpreted to request either that Freethy put pressure on Giordano for Giordano to bring the account up to date; or, it might also be interpreted to request that the prime contractor directly give some help in bringing the account up to date by making the payment from the contractor's own or withheld funds. If the letter were only to seek the prime contractor's "moral assistance" there would have been less reason to give exact computations of amounts, the amount of retention and the fact that the account was subject to adjustments. Likewise, there would have been no need for the follow-up letter giving a detailed statement of adjustments if all that was sought was Freethy's help in putting pressure on Giordano for the latter to make the payment.
 
 
 14
 The trial court found that the letters under all of the circumstances, did inform the prime contractor that the supplier was looking to him for payment of the subcontractor's bill. We agree.
 
 
 15
 Judgment affirmed.
 
 
 
 [1]
 The Miller Act provides that before any contract exceeding $2,000 in amount for certain public work as described therein is undertaken, the contractor must provide performance and payment bonds for the protection of the United States and of all persons supplying labor and material in the prosecution of the work. Section 2 provides in pertinent part:
 "(a) Every person who has furnished labor or material in the prosecution of the work provided for in such contract, in respect of which a payment bond is furnished under this Act and who has not been paid in full therefor before the expiration of a period of ninety days after the day on which the last of the labor was done or performed by him or material was furnished or supplied by him for which such claim is made, shall have the right to sue on such payment bond for the amount, or the balance thereof, unpaid at the time of institution of such suit and to prosecute said action to final execution and judgment for the sum or sums justly due him: Provided, however, That any person having direct contractual relationship with a subcontractor but no contractual relationship express or implied with the contractor furnishing said payment bond shall have a right of action upon the said payment bond upon giving written notice to said contractor . . . stating with substantial accuracy the amount claimed and the name of the party to whom the material was furnished or supplied or for whom the labor was done or performed . . .." (Emphasis in original). 40 U.S.C. Sec. 270b(a).
 "(b) Every suit instituted under this section shall be brought in the name of the United States for the use of the person suing, in the United States District Court . . .." 40 U.S.C. Sec. 270b(b).
 
 
 [2]
 The letter in full as quoted in the briefs is as follows:
 "Elmer J. Freethy Co.
 1124 Magnolia
 Larkspur, Calif.
 Re. U. S. Army Corps of Engineers Project No. DACW 07-68-B-0028, (Corte Madera)
 Gentlemen:
 We wish to inform you that in the matter of the above mentioned job, Peter F. Giordano and Sons, 525 W. Alma St., San Jose, Calif., shows a balance due us of $22,655.34 as of Sept. 25, 1968.
 Of this balance $19,474.77 is for work performed on or before August 25, 1968 (including $2,971.43 in retention, and $3,180.57 for work between August 26 and Sept. 25, 1968, (including 318.06 in retention).
 This balance is subject to adjustment, since we have adjusted the Wood Island haul 7,904 yards (Giordano's figure) for yardage hauled before our engagement, but we have not been furnished proof of this figure by Giordano.
 Further adjustments will need to be made when we are assessed for trucks furnished by Giordano & Sons after August 28, 1968. We will let you know as soon as these adjustments are made. We would appreciate any help you may be able to give us in bringing this account up to date, as the truckers have already recieved (sic) their money for the work done.
 Sincerely,
 /s/ Wayne Bailey
 Wayne Bailey Trucking"
 
 
 [3]
 No issue is raised as to timeliness of the notice or of its specificity as to amounts or items or as to the manner by which notice was conveyed