UNITED STATES of America, For the Use of SAN JOAQUIN BLOCKLITE, a California Corporation, Plaintiff-Appellant,

v.

LLOYD E. TULL, INC., El Camino Construction Company, and the Ohio Casualty Insurance Company, Defendants-Appellees.

No. 84–2113.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 12, 1985.

Decided Sept. 9, 1985.

Bradley A. Silva, Robert L. Patch, II, Fullerton, Lang, Richert & Patch, Fresno, Cal., for plaintiff-appellant.

Myron F. Smith, Dietrich, Glasrud & Jones, Fresno, Cal., for defendants-appellees.

Before WALLACE and POOLE, Circuit Judges, and LEAVY *, District Judge.

LEAVY, District Judge:

San Joaquin Blocklite supplied masonry materials to the masonry subcontractor on a federal government construction project. The subcontractor, General Masonry, did not pay its bill, and Blocklite turned to the general contractor for payment. The district court concluded as a matter of law that Blocklite's notice under the Miller Act, 40 U.S.C. §§ 270a–270f, to the general contractor was insufficient, and denied recovery on the general contractor's payment bond. This court has jurisdiction over Blocklite's appeal from that decision under 28 U.S.C. § 1291.

## I. Factual Background

Lloyd E. Tull, Inc. and El Camino Construction Co., a joint venture, submitted a bid to the United States Department of the Interior for construction of national park sewage treatment facilities. The bid was accepted and the joint venture became the general contractor for the project. The Ohio Casualty and Insurance Co. issued a

---

* Honorable Edward Leavy of the District of Oregon, sitting by designation.

payment bond. Blocklite delivered masonry supplies to the construction site, beginning in June 1981. The last supplies were delivered on October 27, 1981.

During construction, the general contractor and the subcontractor got into a dispute over who was responsible for the cost of a material called Dur-O-Wal, and the general contractor agreed to pay half the disputed amount. The subcontractor then instructed Blocklite to bill the general contractor for the Dur-O-Wal. When the general contractor received the first three invoices, however, it wrote a letter to Blocklite, dated October 6, 1981, directing that the invoices be sent to the subcontractor.

A week later, Blocklite responded with a letter demanding payment for the total amount billed to the subcontractor, and requesting that it be made by joint check.[1] On January 25, 1982, Blocklite sent a second letter requesting issuance of a joint check.[2] Blocklite asserts that the letters of October 13th and January 28th are legally sufficient notice to the general contractor that Blocklite expected payment for the subcontractor's bill.[3]

## II. Discussion

Before a government construction project worth more than $25,000 is awarded to a general contractor, he must obtain a payment bond to ensure that suppliers are paid. 40 U.S.C. § 270a(a)(2). A supplier who has a contractual relationship with the subcontractor, but not with the general contractor, has a right of action on the payment bond if he complies with the jurisdictional prerequisites set out in the statute:

[A supplier] having direct contractual relationship with a subcontractor but no contractual relationship express or implied with the contractor furnishing said payment bond shall have a right of action upon the said payment bond upon giving

---

1. October 13, 1981
Tim Duvale
El Camino Construction
Box 7961
Fresno, CA 93747
Re: Lodgepole Project, Payment Demand
Dear Tim:
We respectfully request that you prepare joint checks made payable to Blocklite and General Masonry for monies due us on the Lodgepole Project in the amount of $28,938.50. This amount is the total billing as of September 30, 1981 for materials ordered by General Masonry, shipped to the jobsite and invoiced to General Masonry in the amount of $23,916.72 and additional special joint reinforcing ordered by General Masonry, shipped to the jobsite, and invoiced, by their direction, to El Camino Construction in the amount of $5,021.78. No pallet deposits are included in these figures.
Copies of invoices and delivery tickets for the account of General Masonry for materials supplied to the Lodgepole Project only are attached.
Your immediate attention and cooperation is requested and will be appreciated.
Very truly yours;

W.A. Grindle, President
ENCL: 59 copies of invoices and Delivery Tickets

2. Mr. Donald H. Glasrud
Attorney at Law
1175 W. Shaw
Fresno, CA 93711

*Re: El Camino Construction Company*
Dear Don:
I am requesting by way of this letter that a joint check be issued for all sums due and owing to Blocklite and General Masonry on the Lodgepole Project.
If this joint check could be given to Mr. Grindle, he could then obtain the signature of the principals of General Masonry and in that way your client could obtain a release on the project.
If you would like to discuss this procedure with me or have any suggestions to conclude this matter, please do not hesitate to contact me.
Kindest personal regards,
Yours very truly,
FULLERTON, LANG, RICHERT & PATCH
Robert L. Patch, II
cc: Mr. W.A. Grindle

3. The amount claimed in the October letter was $28,938.50. The parties stipulated, and the district court found, that the amount due on February 2, 1982 was $14,733.28. The record reflects that a joint check was issued by the general contractor before November 20, 1981. The record does not show that it was issued to Blocklite. The general contractor argued in the district court and on appeal that, contrary to Blocklite's assertion, no evidence was presented that a payment had been made in response to Blocklite's demand.

written notice to said contractor within ninety days from the date on which such person did or performed the last of the labor or furnished or supplied the last of the material for which such claim is made, stating with substantial accuracy the amount claimed and the name of the party to whom the material was furnished or supplied. . . .

*Id.* § 270b(a). See *United States ex rel. Martin Steel Constructors, Inc. v. Avanti Constructors, Inc.,* 750 F.2d 759, 761 (9th Cir.1984) (listing elements of supplier's cause of action).

 Failure to comply with these requirements will bar recovery on the payment bond. A supplier cannot rely on a payment demand sent to the subcontractor, with a copy to the general contractor. See *United States ex rel. Kinlau Sheet Metal Works, Inc. v. Great American Insurance Co.,* 537 F.2d 222, 224 (5th Cir.1976). Nor can he rely on a letter from the subcontractor of which he was ignorant until trial. See *Bowden v. United States ex rel. Malloy,* 239 F.2d 572, 577 (9th Cir.1956), *cert. denied,* 353 U.S. 957, 77 S.Ct. 864, 1 L.Ed.2d 909 (1957). The general contractor must be able to infer from the communication that he receives from the supplier that he is being asked for payment, and not for help with pressuring the subcontractor to pay. See, e.g., *United States ex rel. Charles R. Joyce & Son, Inc. v. F.A. Baehner, Inc.,* 326 F.2d 556, 559 (2d Cir.1964).

 The written notice required by the statute must expressly or impliedly inform the general contractor that the supplier expects him to pay for labor or materials supplied to the subcontractor. *Bowden,* 239 F.2d at 577. Sufficient notices have taken various forms. For example, in *United States ex rel. Kelly-Mohrhusen Co.*

*v. Merle A. Patnode Co.,* 457 F.2d 116 (7th Cir.1972), a phone call stating the necessary information, followed by a letter confirming the conversation, was adequate even though the letter did not restate the subcontractor's name. *Id.* at 117. In *Liles Construction Co., v. United States ex rel. Stabler Paint Manufacturing Co.,* 415 F.2d 889 (5th Cir.1969), two letters read together were sufficient, although only one letter complied with the Act if the letters were read separately. *Id.* at 891.

In *United States ex rel Bailey v. Freethy,* 469 F.2d 1348 (9th Cir.1972), the notice consisted of two letters stating the amount due from the subcontractor. The first letter closed with a polite request for help in bringing the account up to date; the second showed changes in the balance due and invited the general contractor to call for further explanation. *Id.* at 1350. The notices were held to have adequately informed the general contractor that the supplier was looking to him for payment. *Id.* at 1351.

 Here, as in *Freethy,* the letters were politely phrased, but their meaning was clear. The October 13th letter began: "Re: Lodgepole Project, *Payment Demand*" (emphasis added). The amount claimed and the subcontractor's name were stated. Further detail was provided by attached invoices and delivery tickets. The letter requested issuance of a joint check [4] to Blocklite and the subcontractor. The January 25th letter repeated the request for a joint check for "all sums due and owing to Blocklite and General Masonry," but an exact amount was not stated.

Standing alone the January letter is deficient because it does not state "with substantial accuracy the amount claimed." 40

---

4. At oral argument, Blocklite's counsel observed that the joint check arrangement satisfies the contractual obligation to the subcontractor, as well as the obligation on the bond to the supplier, and that ordinarily the general contractor retains a final payment to the subcontractor until completion of the project. The issuance of joint checks is common practice in the construction industry. *See Moss, Joint Checks: Practices in the Construction Industry,* 43 Cal.St.B.J. 242

(1968). Under California law, the supplier's endorsement of a joint check creates the presumption that he has been paid the money due to him and the general contractor need not fear an action on the surety bond. *Post Bros. Construction Co. v. Yoder,* 20 Cal.3d 1, 5, 8, 569 P.2d 133, 135, 137, 141 Cal.Rptr. 28, 30, 32 (1977). A joint check arrangement is not a substitute for notice under the Miller Act. *See Bowden,* 239 F.2d at 577.

U.S.C. § 270b(a). The October letter is deficient because it was not sent "within ninety days from the date on which [Blocklite] ... supplied the last of the material." *See, e.g., Kinlau Sheet Metal Works,* 537 F.2d at 224 (notices premature). *But see United States ex rel. Honeywell, Inc. v. A & L Mechanical Contractors, Inc.,* 677 F.2d 383, 385–86 & n. 4 (4th Cir.1982) (precompletion notice timely for materials supplied within the previous ninety days). However, in the context of the communications between the contractor and Blocklite, the two letters should be read together. Together, they are sufficient notice to the general contractor that Blocklite expected it to pay the subcontractor's bill. Blocklite's expectation was summarized in its October letter: "Payment Demand."

The judgment of the district court denying recovery to Blocklite on the payment bond is reversed and remanded with directions to enter judgment for Blocklite.