**CTI/DC, INCORPORATED,**
**Plaintiff–Appellant,**

v.

**SELECTIVE INSURANCE COMPANY OF AMERICA, Defendant–Appellee.**

No. 04–1236.

United States Court of Appeals,
Fourth Circuit.

Argued: Sept. 29, 2004.

Decided: Dec. 9, 2004.

**ARGUED:** Craig Alan Holman, Holland & Knight, L.L.P., Washington, D.C., for Appellee. **ON BRIEF:** Stephen J. Annino, Kasimer & Annino, P.C., Falls Church, Virginia, for Appellant. Brandon H. Elledge, Holland & Knight, McLean, Virginia, for Appellee.

Before WIDENER, TRAXLER, and GREGORY, Circuit Judges.

Affirmed by published opinion. Judge GREGORY wrote the opinion, in which Judge WIDENER and Judge TRAXLER joined.

## OPINION

GREGORY, Circuit Judge:

CTI/DC appeals an order of the district court granting Selective Insurance Company of America's ("Selective Insurance") motion to dismiss under Fed.R.Civ.P. 12(b)(6). CTI/DC challenges the district court's finding that on the face of the pleadings it failed to satisfy the notice requirements of the Maryland "Little Miller Act." Md. State Fin. & Proc.Code § 17–101 *et seq.* Finding no error, we affirm.

I.

HR General Maintenance ("HRGM") entered into a contract with Prince George's County, Maryland to both renovate and add an addition to the Cheverly Health Center in Cheverly, Maryland. On October 12, 2000, pursuant to the dictates of the Maryland 'Little Miller Act, Md. State Fin. & Proc.Code § 17–101 *et seq.,*' HRGM obtained a payment bond on the project from Selective Insurance. Selective Insurance is a New Jersey corporation principally engaged in supplying payment and performance bonds on construction projects. The payment bond named Selective Insurance as a surety on the project.

HRGM subcontracted a portion of the construction work under this contract to Selby Construction ("Selby"). Selby then entered into a separate contract with CTI/DC under which CTI/DC agreed to act as a "materialman," delivering concrete supplies and other materials to Selby for the project. CTI/DC is a Washington, D.C. corporation principally engaged in the business of furnishing, contracting, and supplying concrete and concrete related supplies for use in commercial construction.

CTI/DC performed as promised and completed its performance on October 1, 2002. However, Selby failed to pay CTI/DC for the materials and supplies provided, leaving a balance of $111,755.04. On December 3, 2002, CTI/DC sent HRGM a letter requesting copies of the payment and performance bonds for construction project number 2484200. In full, this letter stated:

RE: Cheverly Health Center

Subject: Request for Bonds

CTI/DC Inc. supplied ready mixed concrete to the referenced project. We have an outstanding balance of ONE HUNDRED TWELVE THOUSAND TWO HUNDRED AND SIXTY ONE DOLLARS ($112,261.00) ON INVOICES.

We respectfully request copies of the payment and performance bonds provided by your office to the Prince George's County as owner of the building.

The permit issued for this construction project is no. 2484200. The building is located directly across the street from the Prince George's Hospital Center on Hospital Drive in Cheverly, Maryland. Your cooperation and prompt attention to this matter is appreciated.

J.A. 43. CTI/DC avers that prior to the mailing of this letter, representatives from CTI/DC, HRGM, and Selby met to discuss the outstanding invoices owed on the project. CTI/DC further avers that at this meeting HRGM assured CTI/DC that it would be paid for the materials supplied to Selby.

On January 10, 2003, counsel for CTI/DC sent a second letter to both HRGM and Selective Insurance, explicitly stating that CTI/DC supplied concrete to Selby Construction under a separate contract for the Cheverly Health Center construction project. This second letter further stated that CTI/DC was owed $112,263.97 by Selby, and intended to make a claim on the payment bond provided by Selective Insurance if immediate payment was not remitted.

When payment on the invoices was not remitted, CTI/DC filed suit in the United States District Court for the District of Maryland, Southern Division on March 3, 2003. After CTI/DC filed an amended complaint, Selective Insurance made a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). The district court granted Selective Insurance's motion to dismiss, finding that CTI/DC failed to satisfy the notice requirements of the Little Miller Act. Specifically, the district court found that the first letter failed to satisfy the explicit requirements of the Act because it did not name the subcontractor to whom the materials were supplied and the second letter failed because it was untimely. From that decision, CTI/DC brought this appeal.

## II.

We review a district court's dismissal under Fed.R.Civ.P. 12(b)(6) *de novo. Mylan Lab., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir.1993). "In general, a motion to dismiss for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support its claim and

would entitle it to relief." *Id.* "In considering a motion to dismiss, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Id.*

■ The contract in question was formed in Maryland, which is a *lex loci contractus* jurisdiction. *Ward v. Nationwide Mut. Auto. Ins. Co.*, 328 Md. 240, 614 A.2d 85, 88 (1992). Because we are a federal court sitting in diversity—CTI/DC is a Washington D.C. Corporation while Selective Insurance Company of America is a New Jersey Corporation—we apply Maryland substantive law to determine whether the district court's grant of a 12(b)(6) dismissal was proper. *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Where state law is unclear on an issue, this court must interpret the law as it appears that the Maryland Court of Appeals would. *See Wells v. Liddy,* 186 F.3d 505, 528 (4th Cir.1999).

### III.

On appeal, CTI/DC presents several arguments challenging the district court's finding that on the face of the pleadings CTI/DC failed to satisfy the notice requirements of the Maryland 'Little Miller Act.' Md. State Fin. & Proc.Code § 17–101 *et seq.* CTI/DC contends that (1) the district court erred in failing to read the December 3, 2002 letter in conjunction with HRGM's actual knowledge of the debt to find sufficient notice; (2) the district court erred in failing to read the timely letter (December 3, 2002) in conjunction with the untimely letter (January 10, 2003) to find sufficient notice; and (3) the complaint alleges sufficient facts to raise a

factual issue concerning the existence of an implied-in-fact contract between CTI/DC and HRGM.

We find CTI/DC's arguments unconvincing, and now address each in turn.

### A.

Maryland's "Little Miller Act" requires a contractor on a public project to post payment and performance bonds for any state contract exceeding $100,000. Md. State Fin. & Proc.Code § 17–103. The Act permits a supplier to:

> sue on [the] payment security if the supplier:
>
> (1) supplied labor or materials in the prosecution of work provided for in a contract subject to this subtitle; and
>
> (2) has not been paid in full for the labor or materials within 90 days after the day that the person last supplied labor or materials for which the claim is made.

*Id.* at § 17–108. When the Act was adopted, the preamble to the Act stated "[t]he main purpose of the Bill is to provide greater protection to sub-contractors on contracts awarded by the state." *Atlantic Sea–Con, Ltd. v. Robert Dann Co.,* 321 Md. 275, 582 A.2d 981, 984 (1990). "The obvious purpose of the payment bond is to protect subcontractors and materialmen on State or other public projects where they have no lien on the work." *Stauffer Constr. Co. v. Tate Eng'g, Inc.,* 44 Md.App. 240, 407 A.2d 1191, 1193 (Md.Ct. Spec.App.1979).

■ In keeping with this purpose, courts liberally interpret the "Little Miller Act" in order to protect subcontractors and materialmen.[1] *See State Roads*

---

1. Given that the "Little Miller Act" was patterned after the Federal Miller Act, it is not surprising that courts interpreting the Maryland "Little Miller Act" have occasionally looked for guidance to federal court decisions construing similar provisions of the Federal

*Comm'n v. Contee Sand & Gravel Co.*, 308 F.Supp. 650, 652 (D.Md.1970)(holding that notice received by ordinary mail was sufficient, despite statutory directive to use registered mail); *Stauffer*, 407 A.2d at 1194 (holding that the 90 day period runs from the last day materials were supplied or from the last day work necessary to complete the contract was performed); *Westinghouse Elec. Corp. v. Minnix*, 259 Md. 305, 269 A.2d 580, 583 (1970) (rejecting a restrictive interpretation of the notice provision that would have required a specific statement that the supplier was looking to the contractor for payment).

### B.

■ CTI/DC first contends that the under the liberal construction generally afforded the "Little Miller Act," the December 3, 2002 letter should be viewed as having substantially complied with the statute. CTI/DC argues that as a result of the meeting that took place prior to the mailing of the December letter, HRGM had actual knowledge of the subcontractor to whom the concrete had been supplied. Specifically, CTI/DC asserts that the December 3rd letter and the alleged meeting that took place between CTI/DC, Selby, and HRGM were sufficient to provide notice to HRGM that stated the name of the sub-contractor with "substantial accuracy." The district court ruled that the December 3, 2002 letter was insufficient notice because it failed to name the subcontractor to whom the supplies were provided.

■ In order to bring suit under the payment bond, the Little Miller Act requires that written notice be given to the general contractor within ninety days, and that such notice "(i) shall state with substantial accuracy the amount claimed and the person to whom the labor or material is supplied." Md. State Fin. & Proc.Code § 17–108(b)(2)(i). In defining "substantial accuracy" as the term is used in the Federal Miller Act, courts find it sufficient that "there exists a writing from which, in connection with oral testimony, it plainly appears that the nature and state of the indebtedness has been brought home to the general contractor." *Houston Fire and Cas. Ins. Co. v. United States ex rel. Trane Co.*, 217 F.2d 727, 730 (5th Cir. 1954); *see also United States v. A & L Mech. Contractors Inc.*, 677 F.2d 383, 386–87 (4th Cir.1982) (noting that the statute requires substantial accuracy, not precision).

■ While the statute as a whole is designed to afford additional protection to subcontractors, the notice requirements aim to protect the general contractor. Interpreting the notice provisions of the Federal Miller Act, the First Circuit stated "[t]he notice provision serves an important purpose: it establishes a firm date after which the general contractor may pay its subcontractors without fear of further liability to the materialmen or suppliers of those subcontractors." *United States ex rel. Water Works Supply Corp. v. George Hyman Constr. Co.*, 131 F.3d 28, 32 (1st Cir.1997). As such, although courts lib-

Miller Act. *See Atlantic Sea–Con*, 582 A.2d at 985; *Westinghouse*, 269 A.2d at 582. However, Maryland courts are not bound by Federal court decisions interpreting the Federal Miller Act when interpreting the "Little Miller Act," and take divergent views when such views are mandated by Maryland law. *Compare Montgomery County Bd. of Educ. ex rel. Carrier Corp. v. Glassman Constr. Co.*, 245 Md.

192, 225 A.2d 448, 455 (1967) (finding that "Little Miller Act's" 90 day provision was satisfied when notice was mailed, but not received within ninety days.), *with Pepper Burns Insulation, Inc. v. Artco Corp.*, 970 F.2d 1340, 1343 (4th Cir.1992) (finding that notice provision of Federal Miller Act required that notice be received within 90 days.).

erally interpret the Federal Miller Act's requirements concerning the method by which such notice is given, the rules regarding the contents of such notice are more rigidly applied. *See Maccaferri Gabions, Inc. v. Dynateria Inc.*, 91 F.3d 1431, 1437 (11th Cir.1996).

It is plain that the December 3, 2002 letter, in and of itself, fails to satisfy the explicit content requirements of the "Little Miller Act" because it fails to name the subcontractor to whom the materials were supplied. In apparent recognition of this, CTI/DC argues that the deficient letter should be read in conjunction with HRGM's actual knowledge to form sufficient notice. CTI/DC cites no Maryland authority for the proposition that an insufficient letter may be read in combination with oral testimony to constitute substantially accurate notice under the "Little Miller Act." Instead, CTI/DC cites multiple cases interpreting the Federal Miller Act in which courts have found written notice that omitted the name of the subcontractor to be 'substantially accurate' by reading the written notice in conjunction with prior conversations the parties had regarding the debt in question. *See United States ex rel. Kelly–Mohrhusen Co. v. Merle A. Patnode Co.*, 457 F.2d 116, 119 (7th Cir.1972); *Houston Fire and Cas. Ins. Co. v. United States ex rel. Trane Co.*, 217 F.2d 727, 729–30 (5th Cir.1954).

In our opinion, both of these cases can easily be distinguished from the case at hand because the written notice in *Kelly–Mohrhusen* and *Houston Fire* explicitly referenced the prior conversations about the debt owed by a particular subcontractor. *See United States ex rel. Kelly–Mohrhusen Co.*, 457 F.2d at 119 ("[w]e believe that the letter in this case (which expressly referred to the telephone conversation), together with the other facts, including the general contractor's knowledge of the identity of the roofing contractor, satisfied the 'substantial accuracy' requirement of the statute."); *Houston Fire and Casualty Insurance Co.*, 217 F.2d at 729–30 (holding plaintiff's oral notice to the principal contractor and a written acknowledgment of that specific request was sufficient to satisfy the Federal Miller Act's notice requirements). In contrast, the December 3, 2002 letter in this case makes absolutely no reference to any prior conversations held about the debt in question.

Therefore, we hold that because CTI/DC's notice failed to state the name of the subcontractor or reference any conversation held about the debt, CTI/DC failed to comply with an explicit prerequisite for bringing suit under the "Little Miller Act." The name of the subcontractor is the crucial aspect of the "Little Miller Act's" notice requirements. Absent this information, the safeguards built in by the legislature to protect the general contractor are vitiated because the general contractor is left to use his or her imagination to attempt to determine which subcontractor not to pay. As the Second Circuit stated, "[w]e think the need for exercising imagination was what the notice provision of the Miller Act was intended to prevent." *United States ex rel. A. Edwards & Co. v. Thompson Const. Corp.*, 273 F.2d 873, 877 (2nd Cir.1959).

Here, the December 3, 2002 letter fails to identify who the delinquent subcontractor is. It is devoid of any reference to the name of the subcontractor. Further, it makes no reference to the conversation CTI/DC argues provided the general contractor with actual notice. We recognize that the Maryland Court of Appeals has repeatedly acknowledged the need to lib-

erally interpret the Act.[2] *Stauffer*, 407 A.2d at 1194; *Montgomery County Bd. of Educ.*, 225 A.2d at 455. However, we believe that finding adequate notice in this situation would be beyond a liberal construction. A liberal construction is not one that contravenes the plain language of the statute. *See Pepper Burns Insulation*, 970 F.2d at 1343. Where a statute requires that written notice be given, and the written notice is entirely deficient, a finding that the statutory requirements were satisfied would effectively write the "name" requirement out of the statute. This we cannot do.

Therefore, on the facts of this case, we find that CTI/DC's December 3, 2002 letter simply fails to provide such statutorily satisfactory notice.

### C.

█ CTI/DC next contends the district court erred by failing to consider the letter of December 3, 2002, in conjunction with the letter of January 10, 2003, to determine whether adequate notice was provided. The district court found that the January 10, 2003 letter was untimely, and therefore could not be considered in making the determination of whether or not adequate notice was given.

█ Again, the "Little Miller Act" allows a supplier to sue on a payment security, provided that the supplier satisfies the notice requirements of § 17–108. Specifically, the Act states that a supplier may sue on the security "if the supplier gives written notice to the contractor within 90 days after the labor or materials for which the claim is made were last supplied in the prosecution of work covered by the security." Md. State Fin. & Proc.Code § 17–108(b)(1). While the main purpose of the statute as a whole "is to provide greater protection to subcontractors on contracts awarded by the state," *Atlantic Sea–Con*, 582 A.2d at 984, "[t]he obvious purpose of the ninety day provision is to protect the prime contractor so that after the ninety days he can safely pay a subcontractor, provided he has received no written notice from latter's materialmen or subcontractors." *Stauffer*, 407 A.2d at 1193.

Maryland courts have never considered the exact issue of whether or not an untimely letter may be read in combination with a timely but deficient letter to constitute adequate notice under the "Little Miller Act." In *United States ex rel. San Joaquin Blocklite*, 770 F.2d 862, 865–66 (9th Cir.1985), the Ninth Circuit faced a Federal Miller Act claim where the first letter was deficient and the second letter was untimely.[3] There, the Ninth Circuit held that in the context of the communications between the contractor and the materialman, the two letters should be read together despite the fact that the second letter was untimely. *See id.* at 866.

However, there is also authority for the opposite conclusion. In *United States ex rel. Jinks Lumber Co. v. Federal Insurance Co.*, 452 F.2d 485 (5th Cir.1971), the Fifth Circuit refused to consider an un-

---

**2.** Indeed, on at least one occasion the Maryland Court of Appeals has applied a more liberal reading of the notice provisions than this Court was willing to apply. *Compare Montgomery County Board of Education*, 245 Md. 192, 225 A.2d 448, *with Pepper Burns Insulation, Inc.*, 970 F.2d 1340 (4th Cir.1992).

**3.** CTI/DC cited two other cases for the proposition that the letters should be read together.

*See United States ex rel. Bailey v. Freethy*, 469 F.2d 1348 (9th Cir.1972); *Liles Construction Co. v. United States*, 415 F.2d 889 (5th Cir. 1969). However in both cases, both letters appear to have been timely. *See Freethy*, 469 F.2d at 1350; *Liles Constr.*, 415 F.2d at 891. Thus, these cases are far from dispositive on the issue at hand.

timely letter in conjunction with a timely letter, stating:

> The letter of 20 January arrived after that 90–day period, while the letter and carbon of 19 December arrived well within it. Unless the letter of 19 December provided adequate notice, Jinks is barred from asserting a claim against Dyson.

*Id.* at 487.[4] Additionally, in *United States ex rel. Carter Schneider–Nelson v. Campbell,* 293 F.2d 816 (9th Cir.1961), a Ninth Circuit case not cited in *San Joaquin Blocklite,* the Court confronted a situation where there were four deficient letters (3 timely, 1 untimely). *Id.* at 820–21. There, the Court refused to read the late notice (the only notice the Court found to be adequate) in combination with the timely letters, ultimately holding that adequate notice had not been given. *Id.*

This Court cannot accept the proposition that the Maryland Court of Appeals would adopt a construction of the Act that would effectively vitiate the ninety-day notice protections the statute offers to general contractors. CTI/DC did not provide adequate notice until one hundred and one days after materials and supplies were last furnished. As the Fifth Circuit stated, "[w]ithout a statutory period, materialmen might delay claims unreasonably, thus frustrating the general contractor's need to be able to commit his funds to other activities." *United States ex rel. Jinks Lumber Co.,* 452 F.2d at 487. Were this Court to conclude that such a delay is acceptable, we would place the ninety-day notice requirement on the proverbial "slippery slope," further impairing the legislative goal of protecting the general contractor. If one hundred and one days is acceptable, where is the logical stopping point? Parties would be able to extend the deadline *ad infinitum* simply by filing a defective notice within the legislated time frame and then seeking to relate adequate but untimely notice back to the date of the deficient notice. Again, a liberal construction is not one that contravenes the plain language of the statute. *See Pepper Burns Insulation,* 970 F.2d at 1343.

The "Little Miller Act" explicitly requires that notice be given to a contractor within ninety-days. The statute contains no provisions for extensions or the "relating back" of any notices. As such, we refuse to read the two letters together, and find that adequate notice was not given.

### D.

■■ Finally, CTI/DC contends that the complaint alleges sufficient facts to raise an issue as to whether there was an implied-in-fact contract between themselves and HRGM. CTI/DC's argument for an implied-in-fact contract centers around an alleged promise made at a meeting held prior to the mailing of the December 3, 2002 letter. Specifically, CTI/DC alleges HRGM was aware that plaintiff was supplying Selby with the concrete for the project and that Shelby owed CTI/DC a substantial amount of money. CTI/DC also alleges HRGM assured CTI/DC that it would be paid for the material on the project.

■■ "An implied contract is an agreement which legitimately can be inferred from intention of parties as evidenced by the circumstances and the ordinary course of dealing and the common understanding of men." *County Comm'rs of Caroline County v. J. Roland Dashiell & Sons, Inc.,*

---

4. Ultimately the Court found sufficient notice by reading a letter and a carbon, both sent on the same day, together. *See United States ex rel. Jinks Lumber Co.,* 452 F.2d at 488.

358 Md. 83, 747 A.2d 600, 606 (2000); *see Alternatives Unlimited, Inc. v. New Baltimore City Bd. of School Comm'rs et al.,* 155 Md.App. 415, 843 A.2d 252, 289 (Md. Ct.Spec.App.2004)("A true implied contract or contract implied in fact, does not describe a legal relationship which differs from an express contract: only the mode of proof is different.").

■ The formation of a contract requires mutual assent (offer and acceptance), an agreement definite in its terms, and sufficient consideration. *See Peer v. First Federal Sav. and Loan Ass'n of Cumberland,* 273 Md. 610, 331 A.2d 299, 301 (1975). The Restatement Second of Contracts defines consideration as follows:

(1) To constitute consideration, a performance or a return promise must be bargained for.

(2) A performance or return promise is bargained for if it is sought by the promisor in exchange for his promise and is given by the promisee in exchange for that promise.

(3) The performance may consist of

(a) an act other than a promise, or

(b) a forbearance, or

(c) the creation, modification, or destruction of a legal relation.

(4) The performance or return promise may be given to the promisor or to some other person. It may be given by the promisee or by some other person.

Restatement (Second) of Contracts § 71.

Many courts, this Court included, have recognized the proposition that a general contractor can become liable directly to a supplier of its subcontractor in circumstances where the oral representation or agreement works to the detriment of the supplier. For example, in *American Cas. Co. of Reading Pa. v. Southern Materials Co.,* 261 F.2d 197, 198–99 (4th Cir.1958), the subcontractor fell delinquent in payments to the materialman, and the materialman notified the contractor of his plans to notify the bonding company and the public works officer. The contractor requested that the materialman forego giving such notice, continue to perform, and verbally agreed to pay the materialman for the concrete previously delivered. *See id.* The materialman performed under this new agreement and the district court ultimately found the general contractor liable. *See id.*

However, in every case CTI/DC cites for this proposition, the court in question made a specific finding that consideration had passed from the materialman to the general contractor for the promise to cover the subcontractor's debt.[5] For example, in

---

**5.** *See United States ex rel. Billows Electric Supply Co. Inc. v. E.J.T. Construction Co. Inc.,* 517 F.Supp. 1178, 1182–83 (E.D.Pa.1981) (The court found a contractual relationship where a materialman notified the contractor that it would discontinue performance until the outstanding balance was paid, the general contractor agreed to pay both the outstanding balance and for any future orders, and the materialman performed.); *United States ex rel. Keener Gravel Co. v. Thacker Constr. Co.,* 478 F.Supp. 299, 301–02 (E.D.Mo.1979) (The court found that "the job created at the very least an implied contractual relationship" where a materialman notified the contractor that he would discontinue performance if they did not accept deliveries and pay a specified price, the contractor verbally agreed to this arrangement, and the materialman performed); *United States ex rel. Greenwald Supon, Inc. v. Gramercy Contractors, Inc.,* 433 F.Supp. 156, 160 (S.D.N.Y.1977) (The court noted that "[i]n consideration for this express promise from defendant, plaintiff remained on the job at West Point and completed its contractual obligations ... the contractor and plaintiff were operating under, at the very least, an implied contractual relationship."); *United States ex rel. Strona et al. v. Bussey et al.,* 51 F.Supp. 996, 998 (S.D.Ca.1943) ("The evidence further shows that there was a direct contract between the intervenor, House, and the defendant, Bussey, whereby Bussey prom-

**124**

*American Casualty* the Court explicitly found that the materialman furnished consideration for the contractor's promise to pay the subcontractor's debt

when the materialman relinquished its right to give written notice and continued to deliver concrete to the site after the agreement. *Id.*

By contrast, CTI/DC makes no allegation that any consideration passed to HRGM for the promise to cover the debts of the subcontractor. CTI/DC last furnished materials/supplies to HRGM on or about October 1, 2002. The meeting at which CTI/DC alleges HRGM made the promise to pay took place on or about December 3, 2002. There is no allegation of continued performance (or even a promise of continued performance) by CTI/DC after the alleged promise because CTI/DC had completed its obligations in October of that year. Nor is there any allegation that CTI/DC forewent the exercise of any rights it held as a result of the alleged promise. In short, the amended complaint is devoid of any allegation that any acceptable form of consideration passed from CTI/DC to HRGM for the promise to cover Selby's debt.

As such, the district court correctly ruled that CTI/DC's argument has no basis in the factual allegations made in the amended complaint, and thus properly dismissed the claim for failing to state a claim for which relief could be granted.

## IV.

Therefore, we find that the district court did not err in granting Selective Insur-

ance's rule 12(b)(6) motion. The judgment of the district court is hereby affirmed.

*AFFIRMED*

---

ised intervenor that if he would continue his work on the Cal–Aero Airport Bussey would

pay the same").