**UNITED STATES, to Use of KEWAUNEE MFG. CO. v. UNITED STATES GUARANTEE CO.**

Civ. No. 74.

District Court, W. D. New York.
April 14, 1939.

Richard D. Daniels, of Washington, D. C., for plaintiff.

Rann, Brown, Sturtevant & Kelly, of Buffalo, N. Y. (Mark N. Turner, of Buffalo, N. Y., of counsel), for defendant.

KNIGHT, District Judge.

This suit is brought by the use plaintiff to recover $2,456.66, which it is claimed is the amount of unpaid bills for material delivered by the use plaintiff to Cullin, Inc., subcontractor of Irwin and Leighton, general contractors, and which materials it is claimed went into a building then being constructed for the United States Veterans' Administration at Bath, New York, on a contract between the government and Irwin and Leighton. The case comes on for hearing now upon motion based upon two specific grounds: (1) that the complaint fails to state a cause of action; (2) that it fails to allege that notice to the principal contractor was given as required by the statute. Decision of one motion is decisive of the other.

The sole question is whether the giving of the notice set forth in Section 270b, Title 40 U.S.C.A., is a condition precedent to the right to sue. For the purposes of this motion the allegations of the complaint are deemed true.

The Act under consideration, sometimes known as the "Miller" Act, supersedes the so-called Heard Act, 40 U.S.C.A. § 270. The purpose of the superseding Act is well pointed out in the record of proceedings of the House of Representatives touching the passage of the Act, and the experience of this court has clearly demonstrated the need of changes in the law. Under the Heard Act a single bond was given by the contractor, and the United States had the sole right within a certain time in the first instance to bring suit to have claims of various claimants adjudicated. If no suit were then brought by the United

States, claimants could institute suit only after six months following completion and final settlement of the contract. The statute often permitted great delay in the enforcement of a claimant's rights and consequent loss. Not only was final settlement often long deferred, but much uncertainty arose as to what constituted "final settlement." Under the "Miller" Act the contractor gives a bond of performance and a bond for protection for persons furnishing labor and materials. Such have the right as here to sue the surety on the payment bond under certain conditions. The pertinent provisions of the Act read: "Provided, however, That any persons having direct contractual relationship with a subcontractor but no contractual relationship express or implied with the contractor furnishing said payment bond shall have a right of action upon the said payment bond upon giving written notice to said contractor within ninety days from the date on which such person did or performed the last of the labor or furnished or supplied the last of the material for which such claim is made, stating with substantial accuracy the amount claimed * * *. Such notice shall be served by mailing the same by registered mail, postage prepaid, in an envelop addressed to the contractor * *." Section 270b (a), Title 40 U.S.C.A.

It is not claimed herein the use plaintiff gave any such notice until long after the expiration of ninety days after the delivery of the last installment of materials for which claim was made. The use plaintiff, however, asserts that under the facts alleged it is excepted from the notice requirement, because it had an implied contractual relationship with the general contractor. The complaint alleges, in part: "Cullin issued instructions to the firm of Irwin and Leighton, which instructions the firm accepted, that said Irwin and Leighton should retain from payment so made such sums of money as were necessary to pay creditors of Cullin, Inc. * * * An implied contract was thereby created between Kewaunee Manufacturing Company, a Wisconsin Corporation, and the firm of Irwin and Leighton that said firm should pay to Kewaunee Manufacturing Company * * * the sum of * * *."

We are agreed with the contention of the plaintiff that the statute was passed for protection of those who furnish labor and material on public buildings; that it is to be liberally construed; that in deciding the questions raised the court is called upon to apply certain standards or "yardsticks" to protect the interests of the materialmen; that in case of ambiguity the court may resort to extrinsic facts to aid it in reaching a conclusion. A long line of decisions of the Supreme Court supports these rules.

We seek to apply these rules of determination. This statute gives a special cause of action to one who has direct contractual relationship with the subcontractor but does not give such right of action to one who has "contractual relationship express or implied with the contractor furnishing" the bond. It seems that this must have been intended to refer to contracts directly between the materialman and the bonded contractor. It was not intended to apply to a liability to the materialman created by agreement between the contractor and subcontractor to which the materialman was not a party. Such a construction would violate the purpose of the Act. The language shows its purpose was to benefit the materialman and at the same time protect the contractor by requiring notice of the nature of the claim. Under plaintiff's theory the way would be opened to every materialman to sue the contractor based on the claim that the contractor had agreed with the subcontractor to pay all of the subcontractor's bills out of the income from the contract. This language in the statute is entirely new. We have no precedent to guide. We interpret its meaning with the purpose of the Act in mind. Under such interpretation it is thought that the contract "express or implied" must be such a one as flows from the relations directly between the materialman and the contractor.

The motion to dismiss must be granted.