**UNÍTED STATES of America, for the Use and Benefit of Phillip E. WARREN, Appellee,**

v.

**Alva E. KIMREY and St. Paul Fire and Marine Insurance Company, Appellants.**

**No. 73-1515.**

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 16, 1973.

Decided Jan. 4, 1974.

Rehearing and Rehearing En Banc Feb. 19, 1974.

---

J. W. Dickey, Jr., Pine Bluff, Ark., for appellants.

Carlton, Currie, Pine Bluff, Ark., for appellee.

Before VAN OOSTERHOUT and MOORE,* Senior Circuit Judges, and WEBSTER, Circuit Judge.

VAN OOSTERHOUT, Senior Circuit Judge.

This is a timely appeal by defendants Alva E. Kimrey and St. Paul Fire and Marine Insurance Company (St. Paul) from final judgment based on jury verdict in favor of plaintiff Warren. Kimrey upon the basis of a competitive bid in response to the Government's solicitation for bids purchased specified buildings from the Army at the Pine Bluff Arsenal for $17,137.13. The buildings were to be removed and demolished. The purchaser was required to fill in excavations and grade. The fill and grading work was subcontracted to Warren. Kimrey provided the Govern-

* Honorable Leonard P. Moore, Senior Circuit Judge, Second Circuit, sitting by designation.

ment with a performance bond with St. Paul as surety.

Warren, after entering into a contract with Kimrey, was fired. The present action with jurisdiction based on 40 U. S.C. § 270b and 28 U.S.C. § 1352 is brought against Kimrey and St. Paul on the performance bond. Liability was denied.

St. Paul by motion to dismiss and by motion for directed verdict, both of which were overruled, raised the issue that plaintiff's claim is not covered by its performance bond.

*The Surety's Appeal.*

We shall first consider St. Paul's appeal. St. Paul urges that the trial court erred in denying its motion for directed verdict upon each of the following grounds:

A. In holding that the Miller Act applies to Kimrey's purchase.

B. In holding that the performance bond provided the Government by St. Paul could be converted into a payment bond for the benefit of the plaintiff, whether or not the Miller Act applies.

Plaintiff's theory is that the transaction between the Government and Kimrey is a transaction covered by the Miller Act; that the Miller Act requires both a performance bond for the benefit of the Government and a payment bond for the benefit of labor and material men, and that the bond issued should be liberally construed to include all coverage required by the Miller Act.

Forty U.S.C. § 270a provides in pertinent part:

(a) Before any contract, exceeding $2,000 in amount, for the construction, alteration, or repair of any public building or public work of the United States is awarded to any person, such person shall furnish to the United States the following bonds, which shall become binding upon the award of the contract to such person, who is hereinafter designated as "contractor":

(1) A performance bond with a surety or sureties satisfactory to the officer awarding such contract, and in such amount as he shall deem adequate, for the protection of the United States.

(2) A payment bond with a surety or sureties satisfactory to such officer for the protection of all persons supplying labor and material in the prosecution of the work provided for in said contract for the use of each such person. * * *

The trial court erred in finding the transaction here involved between the Government and Kimrey falls within the provisions of the Miller Act. The contract does not involve "the construction, alteration, or repair of any public building or public work." Instead, it represents a sale of surplus, unwanted Government buildings and equipment. This is clearly illustrated by the manner in which the Government handled the transaction. The heading of the notice and advertisement for sale reads in large letters: "Offering for Sale Chlorine-Caustic Soda Plant [Excluding Land]." The property offered is described in detail together with the terms of sale in a lengthy document. Bids are solicited and the terms of the contract to be entered into with the successful bidder are set out. Kimrey's bid was accepted by William D. Schwennsen, Chief, Management and Disposal Branch, Real Estate Division. Mr. Schwennsen as a witness testified as follows:

Q. You're actually not a contracting officer, are you, as known in the Federal Government? A. No, sir.

Q. Would you explain the difference, please, sir, how you could sign as chief of this section and not as a contracting officer? A. Under delegation of authority from the District Engineer, I have been authorized to sign documents on the disposal of buildings for off site use, that is, surplus and excess buildings, improvements, and so on. I do that in the capacity of Chief of Management and Disposal Branch, not as a contracting officer, because a contracting officer, so far as the government is concerned, is to be bonded. No. 1, and, secondly,

they are under the jurisdiction of the Armed Services Procurement Regulations which is, in a sense, a supply matter wherein the government pays for the services or materials that it purchases.

The offer of sale at paragraph "8" requires the successful bidder to provide a performance bond and further provides "Standard Form 25 * * * may be used for this purpose." The performance bond provided by St. Paul was on Form 25. The bond runs to the Government as obligee and contains no provision for the protection of persons providing labor or material.

On October 19, 1972, after the buildings had been removed, and the ground had been graded, Mr. Schwennsen returned the performance bond to Kimrey, the letter of transmittal stating:

According to our records you completed all work required under the contract of 11 October 1972. Accordingly, there is inclosed for your disposition your St. Paul Fire and Marine Insurance Company Bond No. 400CYO727, which served as your performance guarantee under the contract.

■■ We hold that the contract for sale of the Government property is not a contract covered by the Miller Act. The Miller Act appears to be unambiguous in this respect. If any ambiguity exists in § 270a, the practical construction of the statute by the Government agency in charge of the transaction is entitled to great weight. University of Southern California v. Cost of Living Council, 472 F.2d 1065, 1068 (Em.App.1972); Udall v. Tallman, 380 U.S. 1, 16, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965). Moreover, § 270b, setting out the rights of persons furnishing labor or material, gives the unpaid provider of labor and material a right to sue therefor on the payment bond. No similar right is given on the performance bond which under the terms of § 270a is for the protection of the United States.

■ Plaintiff's second contention that he is entitled to recover against the surety on the performance bond, whether or not the Miller Act applies, lacks merit. The contract between the Government and Kimrey, evidenced by the offer and acceptance as above set out, requires a performance bond only. The Government is the only obligee for such bond. No provision is made in the contract or the bond for the protection of persons furnishing labor or material.

The present case is distinguishable from American Casualty Co. v. Brezina Construction Co., 295 F.2d 603 (8th Cir. 1961). In that case the contract was covered by the Miller Act. The suit was brought by the surety of the general contractor who was the obligee on the bond, and it was determined upon the basis of the bond and the subcontract that the bond should be construed to cover labor and material claims incurred and unpaid by the subcontractor.

In National Union Fire Ins. Co. v. D & L Construction Co., 353 F.2d 169 (8th Cir. 1965), we adhered to our holding in *Brezina* upon the basis of the facts in that case, and went on to say:

Our holding is limited to the facts there presented and such case does not go to the extent of holding that a performance bond will under all circumstances cover all of the liabilities contemplated by a payment bond. [353 F.2d 169, 172–173.]

In United States v. Ardelt-Horn Construction Co., 316 F.Supp. 254 (D.Neb. 1970), suit was brought by a subcontractor on the contractor's performance bond to recover for labor and materials. Judge Urbom, in a very well-reasoned opinion supported by respectable authority, under the heading of "Third Claim for Relief," discusses *Brezina* and holds that the surety on a performance bond on a Government contract is not obligated to pay for labor and material furnished by a subcontractor. The basis of the decision is that there is no language in the contract or the bond showing any intention to make a subcontractor a third party beneficiary on the performance bond. We affirmed on this issue on the basis of Judge Urbom's opinion.

United States v. Ardelt-Horn Construction Co., 446 F.2d 820–821 (8th Cir. 1971), stating:

> Plaintiff bases its right to recover on the performance bond upon the theory that it is a third party beneficiary, and upon the theory of equitable subrogation to the rights of the government on the performance bond. We affirm the dismissal of the third claim for relief upon the basis of the trial court's well considered opinion.

We agree with the view of the trial court that the Miller Act by its clear language, which is fully supported by the legislative history, provides for a payment bond for protection of those providing labor and material on government projects and a performance bond for the protection of the United States, and that no basis exists for plaintiff's claim as a third party beneficiary of the performance bond.

Similarly, in our present case plaintiff is not made an obligee on the performance bond and no legal or evidentiary basis exists for a determination that the parties to the bond intended to cover any right of the plaintiff subcontractor to recover the cost of labor or material as a third party beneficiary of such bond. The performance bond here involved as written unambiguously makes the Government the sole obligee and contains no provision for the protection of building or material men. There is no substantial evidence in the record to support extending the performance bond to the plaintiff under the facts in this case. The judgment against St. Paul is reversed. St. Paul is entitled to a dismissal of the action as to it.

### Defendant Kimrey's Appeal.

 The only error urged in support of Kimrey's appeal is a brief paragraph under the heading of conclusion which asserts Kimrey should be entitled to a new trial because he was prejudiced by the court's reference in its instructions and verdict forms to St. Paul as the surety. Kimrey contends that this injected the issue of insurance in the case and that this had a prejudicial effect. The court's reference to St. Paul as the surety was necessary because St. Paul was a joint defendant. The liability of Kimrey is established under his contract with the plaintiff. Kimrey has failed to set out the specific instructions and his objections to them, if any, as required by our rules, either in the appendix or in his brief and has failed to demonstrate that he had any real or valid defense to plaintiff's claim. In any event, he has failed to show that any error that might have been committed is prejudicial. The judgment against Kimrey is affirmed.

Reversed on St. Paul's appeal and remanded with direction to dismiss as to St. Paul. Affirmed on defendant Kimrey's appeal.

### On Petition for Rehearing

On January 30, 1974, an order was entered denying petition of appellants for rehearing en banc and also denying the petition for rehearing. This order is now hereby set aside as being prematurely entered. This court having now considered petition for rehearing en banc filed by counsel for appellants it is hereby denied.

It is further ordered that appellants' petition for rehearing is denied. With respect to ground 2 asserted by appellants in the petition for rehearing, which reads:

> 2. In the opinion of the petitioner, St. Paul, the Court has overlooked the fact that St. Paul's indemnity company is the surety of the supersedeas bond of Kimrey, and therefore such surety exposure should be cancelled, along with the reversal of the judgment of St. Paul.

the court states that such issue is not properly before us. The record before us fails to show that such issue was raised in the trial court and such issue was not raised in appellants' brief on appeal, and the record is incomplete upon such issue. Such issue has not been passed upon by this court.