567 F.Supp. 464 (1983)
UNITED STATES of America, for the Use of GREENWALD INDUSTRIAL PRODUCTS COMPANY, INC., Plaintiffs,
v.
BARLOWS COMMERCIAL CONSTRUCTION COMPANY, et al., Defendants.
No. 82-3447.
United States District Court, District of Columbia.
July 26, 1983.
*465 Barry H. Gottfried of Kaswell, Perazich & Watson, Washington, D.C., for plaintiffs.
Robert C. Maddox of Conroy, Fitzgerald & Ballman, Rockville, Md., for defendants.

OPINION
CHARLES R. RICHEY, District Judge.
This matter is before the Court on the parties' cross motions for summary judgment, the oppositions thereto and the entire record herein. Use-plaintiff, Greenwald, has brought suit against Eastern Indemnity Company seeking to obtain payment under a bond provided by Eastern, as surety, under the Miller Act. The Court holds that Greenwald is entitled to such payment because it had an implied contract with the contractor who obtained the bond. The Court will thus grant plaintiff's motion for summary judgment and deny defendants' cross motion.

FACTS
Greenwald is a supplier of industrial products. On May 7, 1980, Greenwald received a credit application from Frank Barlow. The application stated that it was on behalf of Barlow Commercial Construction Company. Upon the approval of the application, Mr. Barlow signed an agreement opening an account with Greenwald (the "Barlow account") and agreeing to pay interest and attorneys' fees in the event of delinquency. This agreement was signed "Frank Barlow, President." It did not indicate what company the account was for, or on behalf of what company Mr. Barlow signed as president.
Mr. Barlow, in fact, owned several different companies. The two entities relevant to this case are Barlows Commercial Construction ("Barlows Construction") and Barlows Inc. The board of directors and shareholders of both of these companies were identical, they had the same address, and Mr. Barlow was president of both.
In 1982, Greenwald began receiving orders on the Barlow account. Greenwald sent a statement of accounts addressed to Barlows Construction based on these orders. Greenwald was never paid for the bill on the Barlow account. However, on March 11, 1983, Barlows Inc. filed for bankruptcy and acknowledged in that proceeding that it had an outstanding debt to Greenwald for the amount due on account.
The Barlow account with Greenwald totalled $18,774.01. Of this amount, $11,269.71 was attributable to three deliveries made by Greenwald to the Auditor's Building. The Auditor's Building is a government building at which Barlows Inc. was a contractor  Barlows Construction did no work on the building. Moreover, the purchase orders for two of these three deliveries, and a disbursement voucher for the third delivery, were on Barlows Inc. stationery.
Because the Auditor's Building was a public project, it was covered by the Miller Act. 40 U.S.C. §§ 270a & 270b. Pursuant to this statute, contractors performing work on public buildings are required to provide a payment bond "for the protection of all persons supplying labor and material in the prosecution of the work [done on that building]." *466 40 U.S.C. § 270a(a)(2). In compliance with this requirement, Barlows Inc. provided a bond to the government with itself as principal and Eastern Indemnity Company of Maryland ("Eastern") as surety.
Upon default on the Barlow account, Greenwald attempted to obtain payment from Eastern on the Miller Act bond. Eastern, however, refused to pay, claiming that Greenwald had only contracted with Barlows Construction, while Eastern had only agreed to bond Barlows Inc. Eastern alleges that Greenwald was merely a supplier to a subcontractor (Barlows Construction) that provided materials to the contractor (Barlows Inc.) and therefore was not entitled to recover on the bond. The Court finds Eastern's allegations to be unsupported and concludes that an implied contract existed between Barlows Inc. and Greenwald.

GREENWALD HAD AN IMPLIED CONTRACT WITH BARLOWS INC. AND IS THEREFORE ENTITLED TO RECOVER FROM EASTERN UNDER THE MILLER ACT.
The Miller Act covers all suppliers with an express or implied agreement with the bonded contractor. 40 U.S.C. § 270b. See, e.g., United States ex rel. Greenwald-Supon v. Gramercy, 433 F.Supp. 156, 159 (S.D.N.Y.1977). Initially, it is not clear that there was no express agreement between the parties in this case. Mr. Barlow clearly contracted with Greenwald for the provision of supplies in return for payment. While his account was nominally opened for Barlows Construction, the distinction between that company and Barlows Inc. is so blurred, that it is not clear that an express contract could not be found to exist between Greenwald and Barlows Inc.
More importantly, however, it is clear, that at the very least, Greenwald had an implied contract with Barlows Inc. It is well settled that the existence of a contract may be inferred from the actions of the parties. See, e.g., Richardson v. J.C. Flood, 190 A.2d 259 (D.C.App.1963); 17 Am.Jur.2d 336. Thus, if the Court finds that the parties' actions indicate that they understood that Greenwald was to deliver goods to Barlows Inc. at the Auditor's Building and that Barlows Inc. would use and pay for those goods, the Court must conclude that a contract existed between them. Yet, there can be little dispute that this is what happened here. Greenwald received an order on the Barlow account to deliver goods to the Auditor's Building where only Barlows Inc. was employed. Greenwald delivered those goods, with the clear expectation of receiving payment for them. When Barlows Inc. used the goods in its construction it certainly had no reasonable expectation of receiving them for free. Furthermore, Barlows Inc. clearly indicated that it intended to pay for these goods by listing Greenwald as a creditor in its bankruptcy proceeding.
Eastern asks the Court to conclude that there was no contract between Barlows Inc. and Greenwald. Instead, to explain how Barlows Inc. came to use Greenwald's products, Eastern suggests that Barlows Inc. received Greenwald's goods through a subcontractor, Barlows Construction, with whom Greenwald had an express contract. In this scenario, Greenwald has no contractual relationship with Barlows Inc. and therefore has no entitlement to the Miller Act bond. There are several problems with this view, however. First, defendants have admitted in interrogatories that Barlows Construction did no work on the Auditor's Building. Second, there is no evidence that any subcontracting arrangement existed between Barlows Inc. and Barlows Construction. Finally, even if there was a subcontracting arrangement, the Court finds that Greenwald complied with the Miller Act requirements for such a situation. See 40 U.S.C. § 270b(a).
Under the Miller Act, if Greenwald was a supplier to a subcontractor, Greenwald would have been obligated to give notice to Barlows Inc., the principal contractor, within ninety days from the date on which the last materials for which recovery is sought were furnished. Here, Greenwald *467 sent a statement to the office occupied by both Barlows Inc. and Barlows Construction. While the statement was addressed to Barlows Construction, because the office to which it was sent and the personnel who received it were identical, the Court is convinced that Barlows Inc. did in fact have notice of this debt. Further, the Court holds that such actual notice was sufficient to satisfy the requirements of the Miller Act even though it was not in strict compliance with the Act's notice provisions. See, e.g., United States ex rel. Hillsdale Rock Co., Inc. v. Cortelyou & Cole, Inc., 581 F.2d 239 (9th Cir.1978).
In sum, the Court concludes that Greenwald is entitled to recover under the Miller Act because it had an implied contract with Barlows Inc. and thus is entitled to the protection of the Barlows Inc./Eastern bond. Further, even if there was no implied contract, the Court would hold for plaintiff because the Court concludes that it complied with the Miller Act requirements for a supplier to a subcontractor.
An order in accordance with the foregoing will be issued of even date herewith.