**CHICAGO RIGGING COMPANY, Plaintiff,**

v.

**UNIROYAL CHEMICAL CO., INC., Defendant.**

**No. 87 C 10922.**

United States District Court, N.D. Illinois, E.D.

July 17, 1989.

James M. Dupree, John M. Mack, Aaron D. Robinson, Holstein Mack & Dupree, Chicago, Ill., for plaintiff.

Michael Lapat, Schwartz and Ginsberg, Chicago, Ill., Wayne Kuep, Epstein, Becker and Green, P.C., Washington, D.C., for defendant.

## MEMORANDUM OPINION AND ORDER

NORDBERG, District Judge.

## I. INTRODUCTION

The plaintiff, Chicago Rigging Co., has brought this suit pursuant to the Miller Act, 40 U.S.C. §§ 270a–270d (1982), which governs the rights of persons furnishing labor or materials in the construction, alteration, or repair of any public building or public work of the United States. The defendant, Uniroyal Chemical Co., Inc. (Uniroyal), was awarded a government contract for the demolition of certain buildings, but did not require the subcontractor of the project, D.A. Principali Engineering, Inc. (PEI), to obtain a payment bond. The plaintiff, who subcontracted with PEI to perform all the demolition and removal work, now claims that PEI has not paid it in full and that Uniroyal is responsible because it negligently failed to secure the bond.[1]

The defendant has filed a motion to dismiss the second amended complaint[2] for failure to state a claim and for lack of subject matter jurisdiction.[3] In support of this motion, the defendant claims that 1) a payment bond never was required because the demolition contract did not fall within the scope of the Act, and 2) in any event, the plaintiff failed to comply with the notice provisions of the Act. For the following reasons, the court grants the defendant's motion to dismiss the cause of action.

## II. FACTS

Uniroyal was awarded a contract with the United States Army under which Uni-

---

1. In its original complaint, the plaintiff named only Uniroyal, Inc. as a defendant, but in its first amended complaint, the plaintiff added Uniroyal Chemical Co., Inc. as a defendant. In their motion to dismiss, the defendants asserted that Uniroyal, Inc. never was a party to the PEI/Uniroyal Chemical Co., Inc. subcontract. (Although the contract bore the logo of Uniroyal, Inc., Uniroyal, Inc. had been liquidated in December 1986, and the first words in the subcontract stated that "[a]ll reference to Uniroyal Inc., Joliet Army Ammunition Plant is changed to: Uniroyal Chemical Company, Inc.[,] Joliet Army Ammunition Plant." *See* Motion to Dismiss, Exh. C. Furthermore, the defendants asserted, because Uniroyal, Inc. was liquidated in December 1986, it never was a party to the prime contract with the United States Army; rather, the sole prime contractor with the government was Uniroyal Chemical Co., Inc. *See id.*, Exh. D.) In the plaintiff's second amended complaint, both Uniroyal, Inc. and Uniroyal Chemical Co., Inc. were named as defendants in the caption, but Uniroyal, Inc. was not included in the prayer for relief. At oral argument, the plaintiff conceded that Uniroyal, Inc. was not a proper defendant in this case. Accordingly, the court dismisses Uniroyal, Inc. as a defendant.

2. The motion to dismiss originally was directed to the first amended complaint. The defendant has agreed to apply the motion and briefs to the second amended complaint.

3. The Rule 12(b)(6) aspect of the motion deals with whether the Miller Act applies to contracts calling for the removal of asbestos from buildings prior to demolition; the Rule 12(b)(1) aspect of the motion deals with whether the plaintiff satisfied the notice requirement of the Act. In support of its motion the defendant attached four exhibits; the plaintiff also attached an affidavit, though it was appended to the second amended complaint. The fact that a court may take into account facts outside the complaint for purposes of Rule 12(b)(1) (but not Rule 12(b)(6)) potentially could present a problem in determining exactly what the "facts" are. In this case, however, the plaintiff did not object to the defendant's attaching the exhibits; furthermore, the Rule 12(b)(6) aspect of the motion involves the purely legal issue whether contracts for the removal of asbestos and the demolition of buildings fall within the ambit of the Miller Act. Accordingly, the facts set out in this opinion are derived either from the second amended complaint (and the attached affidavit of Dave Kerr) or, if taken from the defendant's exhibits, are uncontested and set out for purposes of background.

royal was responsible for the operation and maintenance of the Joliet Army Ammunition Plant and had the power to award contracts for demolition work at the plant. Pursuant to this authority, in March 1987 Uniroyal awarded a subcontract to PEI for the handling and disposing of asbestos fibers and the demolition and disposal of Buildings 703, 708, and 720; work on the project was to begin on April 1, 1987, and the project was to be completed by September 30, 1987. *See* Motion to Dismiss, Exh. C. According to the terms of the agreement, PEI was to receive $400,000, with a 15% retention to be paid upon completion of the work. In addition, the plaintiff alleges that PEI originally was required to post performance and payment bonds, but when PEI was unable to post the payment bond, Uniroyal then waived the bond and increased the retention from 15% to 35% of the contract.

PEI in turn subcontracted with the plaintiff to perform all the demolition and removal work. Initially, the subcontract was for $300,000 with a 15% retention, but the plaintiff later subcontracted for additional work totalling $4,950. The plaintiff completed the work on September 15, 1987, and billed PEI accordingly. On September 1, 1987, the plaintiff received payment, less the 15% retention, for the demolition and removal of Building 720. On September 9, 1987, the plaintiff received payment, less the 15% retention, for work associated with Building 708. Finally, on September 28, 1987, the plaintiff received a partial payment of $100,000 (out of the $158,100 that was due) for the demolition and removal of Building 703. Thus, as of the filing of the complaint, PEI still owed the plaintiff $107,950 for the project: $58,000 for the demolition of Building 703; $4,950 for the additional subcontracted work; and $45,000, which represents the 15% retention that was to be paid upon completion of the work.

From September 28, 1987, to October 14, 1987, the plaintiff's foreman at the Joliet site, Dave Kerr, telephoned the president of PEI and demanded payment. PEI told Kerr that it was awaiting payment from Uniroyal of its retention. On October 14, Kerr telephoned Uniroyal and was informed that on September 28 Uniroyal had paid PEI the 35% retention and that PEI already had spent the money. *See* Second Amended Complaint, Exh. A (affidavit of Dave Kerr).

On November 6, Kerr met with several Uniroyal representatives and told them that Chicago Rigging had not received payment from PEI; that Chicago Rigging may have to sue PEI and Uniroyal for the over $100,000 owed; and that he thought the Miller Act provided Chicago Rigging with a remedy against Uniroyal. *See id.* The plaintiff claims that the Uniroyal representatives told Kerr that Uniroyal was exempt from the Miller Act because the property involved was government-owned and contractor-operated, as opposed to government-owned and -operated. *See id.* The Uniroyal representatives then discussed possible alternative remedies for Chicago Rigging. Believing that the Miller Act might apply to this case, Chicago Rigging filed this complaint on December 30, 1987.

## III. ANALYSIS

### A. Overview of the Miller Act

■ On a private construction project, subcontractors can secure payment through use of mechanics' and materialmen's liens. On a government project, however, such remedies are unavailable because the doctrine of sovereign immunity precludes liens against government property. *Arvanis v. Noslo Eng'g Consultants, Inc.,* 739 F.2d 1287, 1288–89 (7th Cir.1984), *cert. denied,* 469 U.S. 1191, 105 S.Ct. 964, 83 L.Ed.2d 969 (1985). To protect subcontractors, and to encourage potential subcontractors to participate in government projects, Congress passed the Miller Act.[4] The statute requires that before the United States awards a contract exceeding $25,000 for the construction, alteration, or repair of

---

**4.** The Miller Act of 1935 derived from the Heard Act of 1894, ch. 280, 28 Stat. 278 (as amended by Act of Feb. 24, 1905, 33 Stat. 811).

any public building, the contractor must furnish the government with two bonds. The contractor first must furnish a performance bond sufficient to protect the interests of the United States. 40 U.S.C. § 270a(a)(1). For the protection of subcontractors, the contractor must furnish a payment bond, generally in the amount of 50% of the value of the job awarded. *Id.* § 270a(a)(2).[5]

The Act also provides a private right of action on the payment bond for those who furnished labor and materials and who have not been paid for their work. *Id.* § 270b(a). The Act attaches three conditions to this right, however. First, if such person has dealt exclusively with the subcontractor and has had no direct contractual relationship with the prime contractor, he must give written notice of his claim to the prime contractor:

> Every person who has furnished labor or material in the prosecution of the work provided for in such contract ... and who has not been paid in full ... shall have the right to sue on such payment bond for the amount, or the balance thereof, unpaid at the time of institution of such suit ...: *Provided, however,* That any person having direct contractual relationship with a subcontractor but no contractual relationship express or implied with the contractor furnishing said payment bond shall have a right of action upon the said payment bond upon giving written notice to said contractor....

*Id.* (emphasis in original).

Second, the notice must be provided within ninety days from the date on which the subcontractor performed the last of the

labor or furnished the last of the material. Furthermore, the notice must state with "substantial accuracy" the amount claimed and the name of the party to whom the material was furnished or for whom the labor was performed. In addition, the notice must be served by registered mail, postage prepaid, in an envelope addressed to the contractor at any place he conducts his business, at his residence, or in any other manner in which the United States marshal of the district in which the public improvement is situated is authorized by law to serve summons. *Id.* The purpose of this notice requirement is to protect prime contractors by establishing a date beyond which, in the absence of notice, the contractor will not be liable for the debts of the subcontractors.

■ Third, the aggrieved subcontractor must bring suit in the name of the United States for the use and benefit of the subcontractor in the district in which the contract was to be executed. Furthermore, such suit must be instituted within one year after the day on which the last of the labor was performed or material was supplied. *Id.* § 270b(b). Although the Act is remedial in nature and should be construed liberally to effectuate its purpose, "the giving of notice and bringing of suit within the prescribed time is a condition precedent to the right to maintain the action." *United States ex rel. Material Serv. Div. of Gen. Dynamics Corp. v. Home Indem. Co.,* 489 F.2d 1004, 1005 (7th Cir.1973).

In this case, since Uniroyal furnished no bond, the plaintiff is not suing on a bond, but rather is suing on a negligence theory for failure to secure a bond.[6] The plaintiff

---

5. For contracts over $5 million, the bond must be in the sum of $2.5 million. For contracts between $1 million and $5 million, the bond must be in the amount of 40% of the value of the contract. For contracts less than $1 million, the bond must be in the amount of 50% of the value of the contract.

6. Although neither side has briefed the issue, the court notes as an initial matter that the Miller Act's predecessor, the Heard Act, provided a federal cause of action only on the bond, and not for failure to provide a bond. *See, e.g., Strong v. American Fence Constr. Co.,* 245 N.Y. 48, 52, 156 N.E. 92, 93 (1927) (Cardozo, J.):

> Congress has said that contractors shall be liable to materialmen and laborers in an amount to be made determinate by the giving of the bond. The statutory liability, which in turn is inseparably linked to the statutory remedy, assumes the existence of a bond as an indispensable condition. Till then, there is neither Federal jurisdiction nor any right of action that can rest upon the statute.

Although the court in *Strong* held that materialmen might recover as third-party beneficiaries in state court if the contractor breached a promise to provide a bond, *id.* at 53, 156 N.E. at 93, it stressed that no cause of action existed under the Heard Act unless a bond in fact had been

claims that Uniroyal knew from the beginning of Chicago Rigging's subcontract with PEI and had a duty to require PEI to comply with the Miller Act prior to awarding PEI the $400,000 contract. One of these duties, the plaintiff alleges, was that Uniroyal, as the prime contractor, had to secure a bond for the protection of subcontractors hired to perform work at the plant. By failing to require such a bond from PEI, the plaintiff claims, Uniroyal breached its duty to Chicago Rigging and therefore is liable for the sums due Chicago Rigging under its subcontract with PEI. Furthermore, the plaintiff claims that because Uniroyal did not obtain a payment bond, it should not have paid PEI the 35% retention on the contract until it was assured that the other subcontractors had been paid.

In response, Uniroyal first claims that since this is a contract solely for demolition, and not construction, the Miller Act does not apply and Uniroyal therefore was not required to obtain a payment bond. Uniroyal next asserts that since there was no contractual relationship between Uniroyal and Chicago Rigging, Chicago Rigging had to comply with the notice requirements of the Act. Because Chicago Rigging never gave Uniroyal written notice of the claim, the defendant asserts, the plaintiff is precluded from bringing suit under the Act.

### B. The Scope of the Act

■ The Miller Act applies to contracts for the "construction, alteration, or repair of any public building or public work of the United States." 40 U.S.C. § 270a. Therefore, a contract that calls solely for the demolition of a building, and not for any further construction, does not fall within the ambit of the Act. *Cf. United States v.*

*Kimrey,* 489 F.2d 339, 340–42 (8th Cir. 1974) (contract for sale, removal, and demolition of surplus, unwanted government buildings does not involve construction, alteration, or repair work).

The phrase "construction, alteration, or repair" has been interpreted similarly in related federal labor statutes and their administrative regulations. For example, the Davis–Bacon Act, 40 U.S.C. § 276a, governs wage rates payable to employees of contractors and subcontractors involved in the construction, alteration, or repair of public buildings. By contrast, wage rates for employees of contractors involved solely in the demolition or dismantling of buildings are governed by the Service Contract Act, 41 U.S.C. §§ 351–358 (1982). The regulations implementing the Service Contract Act provide, in pertinent part:

> Such contracts are accordingly subject to the [Service Contract] Act where their principal purpose is to furnish services in the United States through the use of service employees. *For example, a contract for clearing timber or brush from land or for the demolition or dismantling of buildings or other structures located thereon may be a contract for construction activity subject to the Davis–Bacon Act where it appears that the clearing of the site is to be followed by the construction of a public building or public work at the same location. If, however, no further construction activity at the site is contemplated the Davis–Bacon Act is considered inapplicable to such clearing, demolition, or dismantling work.* ... It should be noted that the fact that a contract may be labeled as one for the sale and removal of property, such as salvage material,

obtained. The Miller Act also has been so construed. *Universities Research Ass'n, Inc. v. Coutu,* 450 U.S. 754, 777 n. 28, 101 S.Ct. 1451, 14 n. 28, 67 L.Ed.2d 662 (1981); *see, e.g., McDaniel v. University of Chicago,* 512 F.2d 583, 585 n. 1 (7th Cir.), *judgment vacated on other grounds,* 423 U.S. 810, 96 S.Ct. 20, 46 L.Ed.2d 30 (1975), *on remand,* 548 F.2d 689 (7th Cir.1977) (implying private right of action in Davis–Bacon Act), *cert. denied,* 434 U.S. 1033, 98 S.Ct. 765, 54 L.Ed.2d 780 (1978); *Gallaher & Speck, Inc. v. Ford Motor Co.,* 226 F.2d 728, 731 (7th Cir.1955); *Harry F.*

*Ortlip Co. v. Alvey Ferguson Co.,* 223 F.Supp. 893, 894–95 (E.D.Pa.1963). Nevertheless, this court holds that even if there is a private right of action under the Miller Act for failure to provide a bond, the contract still does not fall within the ambit of the Act because it is a contract for the demolition of a building, and not its construction, alteration, or repair; furthermore, even if the contract is governed by the Miller Act, the plaintiff has failed to satisfy the notice requirements of the Act.

does not negate coverage under the Act even though title to the removable property passes to the contractor. While the value of the property being sold in relation to the services performed under the contract is a factor to be considered in determining coverage, where the facts show that the principal purpose of removal, dismantling, and demolition contracts is to furnish services through the use of service employees, these contracts are subject to the Act.

29 C.F.R. § 4.116(b) (1988) (emphasis added); *see IDIR, Inc. v. United States Postal Serv.*, No. 81 Civ. 2507, slip op. at 4 n. 1, 1984 WL 543 (S.D.N.Y. June 25, 1984); *AFL–CIO v. Donovan*, 582 F.Supp. 1015, 1020–21 & n. 5 (D.D.C.1984), *aff'd in part and vacated in part on other grounds*, 757 F.2d 330 (D.C.Cir.1985). Thus, a contract for demolition is a service contract, not a "construction" contract:

Contracts for dismantling, demolition, or removal of improvements are subject to either the Service Contract Act ... or the Davis–Bacon Act.... If the contract is solely for dismantling, demolition, or removal of improvements, the Service Contract Act applies unless further work which will result in the construction, alteration, or repair of a public building or public work at that location is contemplated. If such further construction work is intended, even though by separate contract, then the Davis–Bacon Act applies to the contract for dismantling, demolition, or removal.

48 C.F.R. § 37.301 (1987); *see also id.* § 37.302 ("When a contract is solely for dismantling, demolition, or removal of improvements, the Miller Act ... does not apply.").

At oral argument the plaintiff appeared to concede that the Miller Act applies solely to the construction, alteration, or repair of

a building, and not to its demolition. The plaintiff apparently argues, though, that the contract in this case falls within the ambit of the Act; rather than simply demolish the building, the plaintiff claims, it also had to remove the asbestos—a task that encompassed wetting, packaging, and sealing the asbestos. In this manner, the plaintiff contends, the work done should be characterized as alteration, repair, and enhancement of value—and not simply demolition.

The plaintiff cites no authority for this proposition, and this court has found no case in which a demolition involving asbestos removal was held to be a contract for "construction, alteration, or repair." [7] In this case, the demolition and removal of the buildings were not followed by any further construction; the extra work done on the asbestos was simply a necessary prelude to the building's demolition.[8] Accordingly, since the contract called only for the demolition of the building, it is not governed by the Miller Act.

### C. The Notice Requirement

Even if the contract in this case falls within the scope of the Miller Act, the plaintiff has not satisfied the notice requirements of the Act. The plaintiff does not dispute the fact that there was no express or implied contractual relationship between Uniroyal and Chicago Rigging such that the notice requirement of the Miller Act would not apply. The plaintiff further admits that it did not comply with the literal requirements of the notice provision—that is, it did not send to Uniroyal, by registered mail, a written notice of the amount it claims PEI owed it.[9] Nevertheless, the plaintiff asserts that through numerous telephone calls and one face-to-face meeting, officials of Uniroyal had actual notice of PEI's failure to pay Chicago Rig-

**7.** For example, the contract in *United States ex rel. Universal Engineering, Inc. v. Scientific Coating Co.*, No. C–86–3683, slip op. at 1, 1988 WL 4786 (N.D.Cal. Jan. 4, 1988), called for the removal of asbestos insulation *followed by installation of concrete slabs* and, therefore, fell within the ambit of the Miller Act.

**8.** At oral argument defense counsel noted that demolition contracts frequently require the special asbestos procedures, for obvious safety reasons.

**9.** Because the work was completed on September 15, 1987, the 90–day period for serving written notice upon Uniroyal expired on December 14, 1987.

ging. This actual notice, the plaintiff claims, is enough to satisfy the purpose of the notice requirement. The plaintiff further contends that Uniroyal is estopped from raising lack of written notice as a defense because when Uniroyal told Dave Kerr that it believed the Miller Act was inapplicable to this contract, Uniroyal "induced" him into not reducing to writing his oral representations. Finally, the plaintiff contends that because Uniroyal failed to obtain a bond or at least wait until the plaintiff was paid by PEI before paying PEI its retention, Uniroyal "negligently opened itself up" to the plaintiff's claim and cannot now raise the notice provision as a defense.

In support of these arguments, the plaintiff notes that although courts have strictly construed the ninety-day notice period, courts have relaxed the literal requirements of the Act regarding the form, content, and method of service of the notice. For example, in *United States ex rel. Kelly–Mohrhusen Co. v. Merle A. Patnode Co.*, 457 F.2d 116, 117 (7th Cir.1972), the Seventh Circuit held that the Act is satisfied when notice is served by regular, as opposed to registered, mail. *See also United States ex rel. Hillsdale Rock Co. v. Cortelyou & Cole, Inc.*, 581 F.2d 239 (9th Cir.1978) (notice provision satisfied when all parties received actual notice, within ninety-day period, by regular United States mail). The Seventh Circuit also held that the requirement that the notice state with "substantial accuracy" the name of the subcontractor was met, even though the letter omitted the subcontractor's name, because the omitted information was provided orally and, in any event the general contractor knew the identity of the subcontractor. *Patnode*, 457 F.2d at 117–19.

In addition, in *United States ex rel. Greenwald Industrial Products Co. v. Barlows Commercial Construction Co.*, 567 F.Supp. 464 (D.D.C.1983), the defendant owned two companies, Barlows Commercial Construction and Barlows Inc. The board of directors and shareholders of both companies were identical, the companies shared an office, and the defendant was president of both. *Id.* at 465. The

plaintiff sent notice to Barlows Commercial Construction, instead of Barlows Inc. Nevertheless, "because the office to which [the notice] was sent and the personnel who received it were identical," the court concluded that such "actual notice" was sufficient to satisfy the requirements of the Miller Act, even though it was not in strict compliance with the statutory provisions. *Id.* at 467.

Finally, in *Houston Fire & Casualty Insurance Co. v. United States ex rel. Trane Co.*, 217 F.2d 727, 729–30 (5th Cir.1954), the court held that the plaintiff materialman's oral notice to the principal contractor, coupled with the contractor's written acknowledgement of this request in which he fully recognized the subcontractor's indebtedness, satisfied the notice provisions of the Miller Act. The court reasoned that notice in this case was more effective than if the plaintiff himself had sent a written notice that fully complied with the statutory requirements of "bringing home in writing to the principal contractor the requisite knowledge of the claim and debt." *Id.* at 730.

In all of these cases, however, there was some written notice or acknowledgement within the ninety-day statutory period, and a writing of *some* kind appears to be a requirement of the Act. *See, e.g., Patnode*, 457 F.2d at 119 (" '[T]here exists a writing from which, in connection with oral testimony, it plainly appears that the nature and state of the indebtedness was brought home to the general contractor.' ") (*quoting Houston Fire & Casualty*, 217 F.2d at 730). *United States ex rel. Acme Transfer & Trucking Co. v. H.S. Kaiser, Inc.*, 270 F.Supp. 215 (E.D.Wis.1967), supports this proposition. There the plaintiff talked to the Milwaukee representative of the defendant contractor within the ninety-day period and showed him the invoices sent to the subcontractor. The representative told him to file any claims with the general contractor at his office in Illinois. The plaintiff left no invoices with the Milwaukee representative. Furthermore, the first written demand or notice that was sent to the Illinois office were photocopies

of the invoices; these copies, however, were mailed after the ninety-day period had expired. The court held that the plaintiff had not complied with the statutory notice requirement. The court reasoned that the requirement of a written notice was to allow the general contractor to withhold payment to the subcontractor in order to meet the subcontractor's obligations. The court further stated that

> "[t]he reason why the Miller Act conditions the rights of a person having 'no contractual relationship express or implied with the contractor furnishing said payment bond' upon the giving of proper notice ... is readily understandable. It was assumed that such third parties will first endeavor to collect from the subcontractor with whom they have a contract relation. During a reasonable period, while these efforts are going forward, the contractor withholds the payments due the subcontractor. If he receives a third party claim within ninety days, he reserves appropriate amounts from monies otherwise owing to the subcontractor."

*Id.* at 217 (*quoting United States ex rel. J.A. Edwards & Co. v. Thompson Constr. Corp.*, 273 F.2d 873, 875 (2d Cir.1959), *cert. denied*, 362 U.S. 951, 80 S.Ct. 864, 4 L.Ed.2d 869 (1960)). The court concluded that despite the Milwaukee representative's knowledge of the claim through the oral notice, the plaintiff had not satisfied the Act's requirement of some sort of written notice. *See also United States ex rel. Davison v. York Elec. Constr. Co.*, 184 F.Supp. 520 (D.N.D.1960) (notice provision not satisfied when, even if general contractor had admitted notice and knowledge of facts, plaintiff seller failed to give sufficient written notice; mailed invoices from subcontractor to contractor insufficient); *United States ex rel. Bruce Co. v. Fraser Constr. Co.*, 87 F.Supp. 1 (W.D.Ark.1949) (general contractor not estopped from raising lack of written notice as defense, even though he had actual notice of claim, since no cause of action arises under Act until valid notice given); *United States ex rel. Kewaunee Mfg. Co. v. United States Guar. Co.*, 37 F.Supp. 561 (W.D.N.Y.1939) (even though subcontractor instructed general contractor to retain money necessary to pay creditors of subcontractor, subcontractor's materialman that did not give notice to general contractor of claim until after expiration of ninety-day period could not maintain action on payment bond).[10]

In addition, the plaintiff provides no support for its contention that Uniroyal somehow is estopped from asserting the notice defense because it "induced" Kerr into not reducing his claim to writing and because it "negligently opened itself up" to suit by not requiring PEI to post a payment bond. First, the plaintiff does not explain why Uniroyal's mere expression of its belief in the inapplicability of the Miller Act should excuse the plaintiff's failure to seek the advice of counsel.[11] *Cf. United*

---

**10.** In addition, a case that did not require the plaintiff to comply with the written notice requirement is distinguishable because the court held that there was a direct contractual relationship between the plaintiff and the general contractor. In *United States ex rel. Hargis v. Maryland Casualty Co.*, 64 F.Supp. 522 (S.D.Cal.1946), the agreement between the contractor and the subcontractor specifically provided that the contractor should pay all accrued material, freight, equipment rental and transportation charges, payrolls, and incidental charges and deduct them from the amount due the subcontractor. Furthermore, the general contractor actually made payments to the creditor of the subcontractor for labor and materials provided by the subcontractor. In addition, the contractor not only knew that certain of the plaintiff's equipment was used by the subcontractor, but through certain invoices and other written documents was apprised of all the details of the claim and took action indicating that he interpreted his agreement with the subcontractor as a direct obligation to pay. *Id.* at 526–28. The court held that there was an implied contract between the plaintiff and the contractor. Therefore, the court reasoned, the 90–day notice requirement to the general contractor did not apply, and the defendant surety was liable for the balance due the plaintiff. *Id.* at 528.

**11.** Indeed, the court in *Fraser* held that under no circumstances can a defendant be estopped from asserting the notice, as opposed to the statute-of-limitations, defense. 87 F.Supp. at 5:

> It appears, therefore, that while the court should go as far as possible in granting relief to those furnishing materials to a government project, it can not go beyond the plain mandate of the statute. And, in those cases where

*States ex rel. K & M Corp. v. A & M Gregos, Inc.,* 607 F.2d 44, 48 (3d Cir.1979) (defendant not estopped to denying that it was first-tier subcontractor; plaintiff asserting estoppel must show more than that he was ignorant about some matter; he must show that party to be estopped misrepresented or wrongfully concealed material fact).[12] Furthermore, the plaintiff does not explain why Uniroyal's failure to obtain a payment bond (if indeed it had an obligation to do so) should excuse the plaintiff's own neglect in failing to reduce to writing Kerr's oral representations. Accordingly, this court holds that the plaintiff has failed to comply with the notice provisions of the Act and, therefore, is not entitled to maintain this action.

## IV. CONCLUSION

For the foregoing reasons, the court concludes that the contract in this case is not governed by the Miller Act, and even if it were, the plaintiff has not complied with the notice provision of the Act. Accordingly, the court dismisses the second amended complaint with prejudice.

it is required, the necessity of giving notice can not be waived by the defendant, for a cause of action under the statute does not come into being until such notice has been given. For like reasons, one who has failed to give the required notice can not urge estoppel on the part of the contractor, for regardless of acts or representations of the contractor, a cause of action under the Miller Act does not arise until the required notice has been given, and obviously a contractor could not be es-

topped to assert a defense because no defense is necessary until a valid cause of action has arisen.
The court reasoned that while a defendant could waive his own statutory rights, he could not by waiver confer a right of action upon the plaintiff. *Id.* at 4.

12. The plaintiff nowhere alleges that Uniroyal intentionally misrepresented the law or wrongfully concealed some material fact to induce reliance by Kerr.